275 So.2d 579 (1973)
Paul Z. FLETCHER et al., Appellants,
v.
LAGUNA VISTA CORPORATION, a Florida Corporation, Appellee.
No. Q-424.
District Court of Appeal of Florida, First District.
March 15, 1973.
Rehearing Denied April 25, 1973.
Gary B. Tullis, and John S. Duss, IV, Ulmer, Murchison, Ashby & Ball, Jacksonville, for appellants.
Judson Freeman, Freeman, Richardson, Watson, Slade, McCarthy & Kelly, Jacksonville, for appellee.
RAWLS, Judge.
Appellants-owner bring this appeal from a final judgment awarding appellee-contractor $68,260.45. The award primarily[1] represented overage between the stated contract amount for overhead and the actual amount spent by appellee by serving as the contractor to construct some 204 garden apartments for appellants. The salient point posed by this appeal is whether the total sum payable to the contractor pursuant *580 to a valid written contract can be increased without the owner's written consent.
In the Spring of 1969, the appellants determined that it would be feasible to construct some 204 garden apartments on land they owned. They retained the services of the architectural firm of Allen Frye & Associates who prepared the plans and specifications for the project. Appellants then began intensive negotiations with appellee to serve as contractor for the proposed construction. The negotiations culminated in appellants and appellee executing Document A101 prepared by the American Institute of Architects entitled "Standard Form of Agreement Between Owner and Contractor" wherein the basis of payment is a stipulated sum.
Appellee commenced construction of the apartments under the supervision of architect Frye and the project progressed to a near completion stage with appellants and appellee in apparent harmonious agreement. As the construction was drawing to a close, appellee presented appellants with two "change orders" signed by appellee and architect Frye authorizing an increase in the contract sum. The increase which is contested by this appeal was for some $67,112.45 and represented the difference between the contract stated sum of $80,260.00 for overhead and $147,372.45 which was actually spent by appellee for overhead. Appellants refused to agree to or to sign these change orders and thereafter appellee filed a claim of lien against the property and instigated the present suit to foreclose the lien. The trial judge ruled for appellee, and hence the instant appeal by appellants.
Once the parties have reduced their understanding to a written contract, their conduct is governed by the agreement and the contract is looked to in determining the rights and obligations of the party.[2] Here, appellants and appellee chose to consummate their agreement concerning the construction of a $2,000,000-plus apartment complex in a voluminous printed form contract mass-produced by the American Institute of Architects. This document states in Article 5 of the contract and Sections 9.1.1 and 12.1.2 of the General Conditions of the contract that the stated contract price of $2,000,000-plus is final and subject only to an increase or decrease by a change order. A change order is first defined by 12.1.2 of the General Conditions as a written order to the contractor signed by the owner and architect. If the contract stopped here it would be clear that the stated contract price could only be increased if appellants-owner agreed in writing. But the contract goes on and states in 12.2 of the General Conditions that the contractor can make a claim for an increase in the contract sum and if the owner and the contractor cannot agree on the amount then the sum shall be determined by the architect.
As is vividly illustrated by the above review, the printed A.I.A. contract is replete with ambiguities, contradictions, and is an attempt to give all things to both parties. In such a situation the manner in which the parties themselves have interpreted the contract through their course of dealings is of utmost importance.[3] The record in this case is filled with testimony to the accord that both appellants and appellee had relied on architect Frye to make adjustments in the contract sum and had abided by his decision. Appellants knew that there would be at least a slight overage in the sums spent by appellee for overhead but had never objected. Appellants accepted decreases in the cost of millwork which were incorporated into a change order *581 signed only by architect Frye and the contractor. The parties themselves have interpreted the contract to allow an increase and a decrease in the contract sum with only the written signature of architect Frye. Even if the contract does not grant this authority to architect Frye, the parties through their course of dealings have interpreted and modified the document so as to place in the hands of architect Frye the final authority to authorize increases and decreases in the contract sum.[4]
The judgment appealed is affirmed.
SPECTOR, C.J., and JOHNSON, J., concur.
NOTES
[1] The actual final judgment award was $134,085.67. Prior to trial appellant had admitted owing $45,750.86. In addition the final award encompassed $6,926.00 interest; $248.10 court costs; and $13,500.00 attorneys' fees.
[2] Gendzier v. Bielecki, 97 So.2d 604 (Fla. 1957).
[3] Reinhardt v. Reinhardt, 131 So.2d 509 (3 Fla.App. 1961), and Mileage Realty Co. v. Miami Parking Garage, Inc., 146 So.2d 403 (3 Fla.App. 1962).
[4] Doral Country Club v. Curcie Brothers, Inc., 174 So.2d 749 (3 Fla.App. 1965).