371 So.2d 1096 (1979)
TUTTLE/WHITE CONSTRUCTORS, INC., Appellant,
v.
State of Florida, DEPARTMENT OF GENERAL SERVICES, and Gorham Construction Company, Appellees.
No. LL-39.
District Court of Appeal of Florida, First District.
June 19, 1979.
Rehearing Denied August 1, 1979.
Jon M. Wilson, of Van Den Berg, Gay & Burke, P.A., Orlando, for appellant.
Spiro T. Kypreos, Tallahassee, for appellee Dept. of General Services.
Robert D. Melton, Orlando, for Gorham Const. Co., appellee.
PER CURIAM.
Appellant contractor appeals a final order of the Department of General Services of the State of Florida adopting a report of a hearing officer of the Division of Administrative Hearings recommending that appellant's claims for additional compensation over and above the contract price, under a contract with the Department to construct a youth detention facility, be denied due to the untimely filing of notice of such claims.
We affirm. Articles 8.3.1, 8.3.2 and 12.2.1 of the General Conditions of the contract for construction (AIA Document A-201) which pertain to claims on the part of the contractor (appellant herein) for additional compensation based upon claims for delays or extensions of time not due to the contractor's fault, or upon claims for additional costs incurred by the contractor in the performance of the contract, require that all such claims shall be made in writing to the architect no more than twenty days after the occurrence of the event giving rise to any such claim, or else any such claim shall be waived or deemed invalid. (Emphasis supplied). The hearing officer found that in each instance for which a claim was made the contractor had failed to give the notice of claim within the prescribed twenty day limitation period.
Our examination of the record herein leads us to the conclusion that these findings of the hearing officer as to each claim of the contractor is supported by substantial competent evidence and that we should not substitute a contrary judgment for that of the agency which is based upon such evidence. McDonald v. Dept. of Banking and Finance, (1977, Fla. App. D1) 346 So.2d 569; Pasco County School Board v. Florida Public Employees Relation Commission, et al., (1977, Fla. App. D1) 353 So.2d 108; U.S.Y. & T. Industries, Inc. f/k/a Union Stockyards & Transit Company of *1097 Chicago v. Charolais Herds & Ranchers, Inc., (1979, Fla. App. D1) 367 So.2d 1084, and cases cited therein.
Affirmed.
MILLS, Acting C.J., and MASON, ERNEST E., Associate Judge, concur.
ERVIN, J., dissents.
ERVIN, Judge, dissenting.
I disagree with the finding of the agency that Tuttle/White's claim is barred because a written claim for damages was not filed pursuant to the provisions of the contract requiring the filing within 20 days. In my view, neither article 8.3.2 or 12.2.1 of the general conditions is relevant to a claim for delay damages. The former article requires that all claims for extension of time shall be placed in writing with the architect no more than 20 days after the occurrence of the delay. Section 8.3.4 of article 8, however, states that none of the provisions of that article "exclude[s] the recovery of damages for delay by either party under other provisions of the Contract Documents." Article 12.2.1 requires, if the contractor wishes to make a claim for an increase in the contract sum, written notice be given to the architect within 20 days after the event giving rise to the claim. Article 12.2.1 also does not govern damages for breach of contract. It applies to claims seeking an increase in the contract sum which, for example, are permissible when the parties agree upon change orders which may have the effect of increasing the contract sum. Article 5 of the contract, governing the contract sum, states the amount the owner is to pay the contractor and provides also that the sum is "subject to additions and deductions by Change Orders as provided in the Conditions of the Contract... ." Article 12.2.1 of the general conditions explains that the
[o]wner, without invalidating the Contract, may order Changes in the Work within the general scope of the Contract consisting of additions, deletions or other revisions, the Contract Sum and the Contract Time being adjusted accordingly. All such Changes .. . shall be authorized by Change Order, and shall be executed under the applicable conditions of the Contract Documents. (e.s.)
It is clear that articles 8.3.2 and 12.2.1 of the general conditions govern changes which are modifications of the contract, agreed upon by both parties, not breaches of the contract.
The applicable article, which governs the procedure for filing claims for delay damages, is article 7.4.1, providing that if either party suffers damages because of any act or omission by the other party, a claim shall be made in writing "to such other party within a reasonable time after the first observance of such injury or damage." (e.s.) In my view Tuttle adequately complied with the only condition in the contract which was relevant to its claim.
While Tuttle did not provide the architect in writing with its specific claim until January 13, 1976, well after the time Tuttle was first aware of the delay, nevertheless, prior to that date, the parties had frequent communications between one another concerning delays which Tuttle had encountered at the job site, allegedly due to the failure of the predecessor contractor, Gorham Construction Co., to prepare the site in an adequate manner so that it could proceed. For example, on May 13, 1975, less than 30 days after Tuttle had proceeded under the contract, the minutes of a meeting held with the contractor, the supervising architects and a representative of DGS reflected that an employee of Tuttle had asked DGS "for their opinion concerning claims for delays in the awarding of their contract." (e.s.) A letter written the following day from DGS's products manager confirmed that Tuttle/White had asserted it was "heavily damaged financially because their crews [could not] proceed at the rate they had anticipated." (e.s.) Indeed, from the very inception of the project Tuttle had consistently complained of delays at the site because of Gorham's failure to complete that part of its assigned work. These delays were the alleged cause of the damages which led to Tuttle's letter of January 13, 1976.
It is clear from the record that during the existence of the contract the parties had *1098 dealt with each other in a very informal manner. Their course of dealing was not unlike that of the parties in Fletcher v. Laguna Vista Corporation, 275 So.2d 579 (Fla. 1st DCA 1973), who were laboring under the same AIA contract. There, the owner contested a change order because it was signed only by the architect contrary to the provisions of article 12.1.1, which required such order to be signed by both the architect and the owner. In affirming the trial court's judgment which had construed the contract in favor of the contractor, we stated:
[T]he printed AIA contract is replete with ambiguities, contradictions and is an attempt to give all things to both parties. In such a situation the manner in which the parties themselves have interpreted the contract through their course of dealings is of utmost importance... . Id. at 580-81.
Since the parties were not bound by the terms of articles 8.3.2 or 12.3.1 of the contract, in my view the reasonable time provision of 7.4.1 prevails. I conclude from the record that DGS had reasonable notice of the contractor's claim for delay damages. DGS never reached the merits of the contractor's claim and ruled only on the jurisdictional issue by precluding Tuttle's claim because it was not filed within 20 days. I would, therefore, remand the case for a hearing on the merits.