462 So.2d 523 (1985)
CALOOSA PROPERTY OWNERS' ASSOCIATION, INC., Appellant,
v.
DEPARTMENT OF ENVIRONMENTAL REGULATION; Caleffe Investment, Ltd., and Worthington Enterprises, Inc., Appellees.
No. AU-182.
District Court of Appeal of Florida, First District.
January 8, 1985.
Rehearing Denied February 13, 1985.
*524 Randall E. Denker of Lehrman & Denker, Tallahassee, for appellant.
Dennis R. Erdley, Asst. Atty. Gen., Tallahassee, for appellee-Dept. of Environmental Regulation.
*525 Alan J. Ciklin, Boose, Ciklin & Martens, West Palm Beach, and Robert M. Rhodes, Terry E. Lewis and Cari L. Roth, Messer, Rhodes & Vickers, Tallahassee, for appellees-Caleffe Inv., Ltd. and Worthington Enterprises, Inc.
SMITH, Judge.
Caloosa Property Owners Association, Inc. appeals from a final order of the Department of Environmental Regulation (DER) which issued a dredge and fill permit to appellees Caleffee Investment, Ltd. and Worthington Enterprises, Inc. (developers). Appellant raises eight points on appeal, all of which we find to be without merit. Accordingly, we affirm the order appealed from in its entirety.
The developers filed an application with DER for a dredge and fill permit to construct a series of canals and artificial lakes in connection with their development of an industrial park in western Palm Beach County. The canals and lakes are intended to serve as a surface water management system that would preserve some 133 of the 200 acres of wetlands on the site in their natural condition. These wetlands would provide detention of water run-off and serve as a natural filtration system, removing pollutants from surface water before being discharged into the canals within the park. The remaining wetlands would be dredged and filled, offset with 85 acres of artificially created wetlands vegetated with natural wetland plant species. The proposed surface water management system would allow water to drain from the site into an excavated canal around the perimeter of the park; this water would then discharge at the southeast corner of the site into the Caloosa Canal, which runs through the Caloosa Estates residential development, and then drains into a C-18 canal which eventually empties into the Loxahatchee River Basin.
After DER issued its letter of intention to grant the dredge and fill permit, appellant, representing Caloosa Estates home and property owners, requested a formal administrative hearing on their petition opposing the permit. Appellant contends that the proposed development threatens to contaminate the water supply of Caloosa Estate residents, who are entirely dependent on private wells for their drinking water, since their properties are in the direct path of surface and ground water flow from the proposed development. The hearing officer, after receiving evidence, found that the developers had provided "reasonable assurances," under Rule 17-4.28(3), Florida Administrative Code (1983), that the short and long-term effects of the property would not result in violations of DER's water quality standards. His order recommended that the permit be issued, containing conditions cited in DER's notice of intent, and that the permit be further conditioned upon subjecting all individual site plans to DER's permitting processes in accordance with Rule 17-4.28 and other provisions of Chapter 17, Florida Administrative Code, and Chapter 403, Florida Statutes, as may apply. The order further recommended the developer's posting of a sufficient bond to assure proper implementation and operation of stipulated monitoring systems for individual sites and to assure availability of adequate funds to remove and properly treat any contaminants that might enter surface or ground water as a result of accidents. DER's final order adopted the hearing officer's recommended order, except for the bond requirement. This appeal followed.
Appellant challenges DER's finding that the developers gave "reasonable assurances" on several grounds. First, it contends that most if not all of the industrial activities of the park's future tenants will occur on the site's dry uplands, beyond DER's dredge and fill permitting procedures, citing Rule 17-4.28, Florida Administrative Code, and that a mere stipulation by the developers and DER that these tenants will be required to submit to DER permitting scrutiny is insufficient to confer jurisdiction on DER. Second, appellant maintains that the hearing officer failed to adequately consider the long-term effects of future tenant activity on pollution of Caloosa Canal. Finally, appellant maintains that *526 DER erred in accepting the hearing officer's finding of fact that surface water contamination in the park site could be removed once detected.
We reject appellant's arguments. DER's permitting jurisdiction over future park tenants is assured by the broad permitting jurisdiction granted DER by Section 403.087(1), Florida Statutes (1983), regarding "stationary installation[s] which will reasonably be expected to be a source of air or water pollution... ."[1] Appellant's arguments that DER erred in adopting the hearing officer's findings of fact regarding the development's long-term impact on pollution in Caloosa Canal and the removability of surface water contamination invite us to reweigh the evidence adduced below, contrary to our function as appellate tribunal. Section 120.68(10), Florida Statutes (1983); Tuttle/White Constructors, Inc. v. State, Department of General Services, 371 So.2d 1096 (Fla. 1st DCA 1979). In addition, we note the hearing officer's extensive recitation of the numerous safeguards provided by the developers in the form of specific construction features, as well as by restrictions prohibiting the most potentially hazardous industrial activities, and management, control, review and testing procedures for the prevention and detection of any potential threat to water quality.
Appellant next contends that DER erred in finding that the developers would be able to comply with state water quality standards once their future tenants began activities at the park site. Appellant notes that evidence presented below indicated that the level of pollution of the water at the park site was already below state water quality standards. Appellant contends that DER has no authority to permit the deposit of further pollutants from new sources into the already contaminated water, no matter how de minimis the impact on the receiving water, citing Sections 403.087 and 403.088, Florida Statutes (1983).[2] We agree, however, that DER's interpretation of the aforementioned statutes, as well as Rules 17-4.03, 17-4.07(1), and 17-4.28(3), Florida Administrative Code, as granting it authority to allow additional discharges of pollutants into water bodies where the effect on water quality is found to be negligible, is a permissible one. McDonald v. Department of Banking and Finance, 346 So.2d 569 (Fla. 1st DCA 1977).
Appellant next contends that DER erred by failing to implement its "cumulative impact" doctrine in analyzing the developers' permit application. This doctrine requires DER to consider the precedential value of granting a permit under the assumption that similar future permits will be granted in the same locale, Rule 17-1.63, Florida Administrative Code. DER points out, however, that "cumulative impact" analysis is required only where there is a "reasonable likelihood" of similar project application in the same geographic location in the future. Rossetter v. State of Florida, Department of Environmental *527 Regulation, 5 FALR 1195-A, 1196-A (May 19, 1983). Here, no evidence established a likelihood of such prospective development applications. Hence, although we agree with appellant's contentions that such future development possibilities may in a given case present a matter of genuine concern, DER's acceptance of the hearing officer's determination that the evidence would not establish a finding that the development of off-site parcels together with the contemplated development would cumulatively result in water quality violations does not, on the record before us, afford grounds for reversal.
As to appellant's contention that DER abused its discretion under Rule 17-1.63, Florida Administrative Code, by failing to assert ground water jurisdiction over the park site, Section 403.062, Florida Statutes (1983), DER correctly points out that the application filed by the developers did not request authorization for a sewage disposal system, and thus no ground water permit was yet required when the developers filed their pending dredge and fill permit application.
Appellant further contends that DER should have denied the developers' permit application pursuant to Section 403.088(2)(b), Florida Statutes (1983).[3] Appellant asserts that this section requires that a discharge permit be denied where the receiving water will be below state water quality standards. Here, appellant maintains, since the water quality in the site's receiving waters is already below state standards, the developers must meet Section 403.088(2)(b)'s two-prong test requiring that the project both be desirable under federal law and clearly be in the public interest. Since the developers put on no evidence to meet this burden, appellant asserts, DER erred in granting the permit. On the other hand, the developers point out that they applied only for a dredge and fill permit, and contend that Section 403.088 is addressed to water pollution operation permits, rendering this statute inapplicable to the developers' application. This court has recently agreed with this interpretation of the statute. See, Grove Isle, Ltd. v. State, Department of Environmental Regulation, 454 So.2d 571, 574 (Fla. 1st DCA 1984):
Section 433.088, however, concerns the issuance of operation permits to persons who are discharging waste into waters within the state. This statute cannot, therefore, provide statutory authority for a rule which concerns the issuance of construction permits for stationary installations which will not discharge waste into waters within the state (footnote omitted; emphasis in original).
Finally, appellant asserts that DER erred in rejecting the hearing officer's recommendation that the developers should be required to post a bond to cover damages or expenses in the event of a future accidental contamination of appellant's drinking water. Appellant maintains that this finding was supported by competent, substantial evidence, and that absent the requirement of a bond, the developers would not be able to give the requisite "reasonable assurances" required by DER's permitting process. While it is true that legal authority exists for requiring such bonds, see Section 403.061(14), Florida Statutes (1983), and Rule 17-4.11, Florida Administrative Code, the statute as phrased is permissive rather than mandatory. Since the Secretary of DER here adequately outlined her reasons for rejecting the hearing officer's recommendation,[4] her *528 exercise of discretion will be upheld, Section 120.68(12); Citizens of the State of Florida v. Public Service Commission, 435 So.2d 784, 787 (Fla. 1983).
Accordingly, the order appealed from is AFFIRMED.
NIMMONS, J., concurs.
MILLS, J., concurs in part and dissents in part.
MILLS, J., concurring in part and dissenting in part.
I agree with the majority that seven of the eight points raised by appellant should be affirmed. However, I disagree with the majority on the eighth point and would reverse.
DER erred in rejecting the hearing officer's recommendation that the developers should be required to post a bond to cover damages or expenses in the event of a future accidental contamination of appellant's drinking water. This finding was supported by competent, substantial evidence. Absent the requirement of a bond, the developers would not be able to give the requisite "reasonable assurances" required by DER's permitting process. See Section 403.061(14), Florida Statutes (1983), and Rule 17-4.11, Florida Administrative Code.
The record is devoid of what the developers' "reasonable assurances" are and the Secretary's reasons for rejecting the hearing officer's recommendation are insufficient.
NOTES
[1] Moreover, the stipulation entered into by DER and the developers requiring future park tenants to submit to the DER permitting process is an appropriate exercise of DER's statutory authority to condition the grant of permits "... as ... necessary to effect the intent and purposes of [Section 403]", Section 403.087(3), Florida Statutes (1983).
[2] These statutes provide in relevant part:

403.087 Permits; general issuance; denial; revocation; prohibition; penalty. 
(1) No stationary installation which will reasonably be expected to be a source of air or water pollution shall be operated, maintained, constructed, expanded, or modified without an appropriate and currently valid permit issued by the department, unless exempted by department rule. In no event shall a permit for a water pollution source be valid for more than 5 years. However, upon expiration, a new permit may be issued by the department in accordance with this act and the rules and regulations of the department.
403.088 Water pollution operation permits; temporary permits; conditions. 
(1) No person, without written authorization of the department, shall discharge into waters within the state any waste which, by itself or in combination with the wastes of other sources, reduces the quality of the receiving waters below the classification established for them... .
[3] Section 403.088(2)(b) provides in pertinent part:

(b) If the department finds that the proposed discharge will reduce the quality of the receiving waters below the classification established for them, it shall deny the application and refuse to issue a permit. If the department finds that the proposed discharge will not reduce the quality of the receiving waters below the classification established for them, it may issue an operation permit if it finds that such degradation is necessary or desirable under federal standards and under circumstances which are clearly in the public interest.
[4] The Secretary pointed out, among other things, that only one permit for dredge and fill was at issue, and that other needed permits would be processed separately at future dates; that in view of the hearing officer's findings concerning "reasonable assurances," and the limited nature of the issues presently involved, the bond requirement was not appropriate, although future permitting reviews might establish the need for a bond; and finally, there was nothing unique about the activities for which a permit was being sought to distinguish them from other instances in which the department has not routinely required a bond.