PER CURIAM.
Appellants challenge the decision of ap-pellee Department of Environmental Regulation (DER) to grant a permit to appellees Port Bougainville Associates, Ltd., and Port Bougainville Enterprises, Inc. (Port Bougainville) for modifications on a previously-built marina located in North Key Largo. Finding no reversible error in the proceedings below, we affirm.
A permit was previously granted by DER to a predecessor-in-interest to Port Bougainville in 1975 to construct a marina in North Key Largo. Under this initial permit, authorization was granted to construct a 363-boat marina. Access to the Atlantic Ocean from the marina requires navigation through the Garden Cove Channel, adjacent to both the marina and the John Pennekamp Coral Reef State Park (Park). Garden Cove and the Park were classified as class III outstanding Florida Waters, Rule 17-4.242, Florida Administrative Code. In 1981, City National Bank, another predecessor-in-interest to Port Bougainville, applied for a permit to modify the marina’s existing boat basin. According to the permit application, the modifications sought included: reduction of the marina's boat capacity from 363 to 311, shoaling the marina’s boat basin to a depth of up to six feet, installing fuel and sewage pump-out facilities for boats utilizing the marina, and reconstruction of the marina’s access channel in order to widen the channel and increase water circulation in the basin.
Initially, DER issued an intent to deny the modification permit. City National Bank, which still owned the marina at the time, then moved for a formal administrative hearing. Appellants subsequently sought, and were granted, permission to intervene in the proceedings. Prior to the hearing, DER and Port Bougainville (which had since acquired City National Bank’s interest in the marina) entered into an agreement whereby DER would issue the permit for modification of the marina, in return for which Port Bougainville agreed to further modifications which all the parties anticipated would improve both water quality within the boat basin and navigational safety to and from the marina.
At the hearing, DER presented the testimony of Jeremy Craft and Stephen J. Fox, past and present employees, regarding their view of the Port Bougainville permit application. Both testified that the original marina project would not have been approved had it been sought in 1984, since the water quality in the boat basin periodically fell below state standards. However, Craft testified, the proposed modifications would improve water quality in the basin, by “decreasing the frequency of those violations significantly.” Fox testified that approval of the modification permit would be in the public interest because it would improve the water quality aspects of the marina project “quite a bit.”
An array of expert witnesses testified for both sides of this controversy. There was extensive testimony, both pro and con, on numerous issues including, among others, the impact of the proposed marina modifications on the boat basin’s marine environment, and the effect of increased boat activity upon the sea grass in the Garden Cove channel. No useful purpose would be served by a detailed recitation of the extensive evidence and argument on these and other issues.
*183 We find it necessary to refer only briefly to portions of the hearing officer’s recommended order for clarification of certain of the issues. In his order, the hearing officer found that the dissolved oxygen water quality violations identified by appellants resulted from “natural conditions,” and had been measured by Dr. Rich even prior to construction of the present marina. As to the impact of the proposed marina modifications upon water quality, the hearing officer accepted the testimony of Dr. Christensen that the modifications would result in an improvement of water quality within both the marina and the Garden Cove Channel, due to the design of the marina’s boat basin which the hearing officer found would “[maximize] dispersion of water within the system and along with it, dissolved oxygen.” The hearing officer rejected contrary testimony from the expert witnesses presented by appellants. The hearing officer also found that the proposed marina modifications would not have a detrimental impact on the “benthic communities” within either the marina boat basin, the Garden Cove Channel, or the Park’s waters. In this regard, the hearing officer accepted the testimony of Drs. Rich and Corcoran and rejected the contrary testimony of Dr. Curry. Thus, the hearing officer concluded that Port Bougainville had provided DER with “reasonable assurances” that its proposed marina modifications would not result either in violations of state water quality standards or cause significant destruction to natural resources within the area. Accordingly, the hearing officer recommended that DER issue the requested permit. We find no error in the findings of fact and conclusions of law of the hearing officer, which were adopted by DER with certain modifications not germane to this appeal. Needless to say, the resolution of factual controversies, including those conflicts appellants deem especially critical, is the function of the hearing officer and the agency, and we find no error or impropriety in the manner in which this function has been performed below.
We further find no merit in appellants’ argument challenging DER’s interpretation of rule 17-4.28(3), Florida Administrative Code. The rule itself provides:
The applicant for a dredge and/or fill permit ... shall affirmatively provide reasonable assurance to the department that the short-term and long-term effects of the activity will not result in violations of the water quality criteria, standards, requirements and provisions of Chapters 17-3....
The essence of DER’s interpretation of this rule, as testified to by DER employee David Bishoff, is that the “reasonable assurance” requirement found in Rule 17-4.-28(3) focuses on the activity for which permitting is presently sought, and does not (as appellant’s interpret the rule) cast upon the applicant the burden of providing “reasonable assurances” anew with respect to the original project already constructed in accordance with a valid permit. Thus, under DER’s interpretation of the rule, since the modifications sought would not result in violations, but would slightly improve existing water quality in the affected waters, even if periodic “natural” violations would continue, “reasonable assurances” have been provided by Port Bougainville, based on the testimony of Drs. Christensen and Corcoran. In light of the overall regulatory framework spelled out in Rule 17, Florida Administrative Code, we hold that DER’s interpretation was a permissible reading of the rule and its statutory authority. Department of Environmental Regulation v. Goldring, 477 So.2d 532 (Fla.1985) (DER’s interpretation of statute governing agency’s authority to regulate dredge and fill operations entitled to great deference by reviewing court); Humhosco, Inc. v. Department of Health and Rehabilitative Services, 476 So.2d 258 (Fla. 1st DCA 1985) (department’s construction of statutory term “uniform methodology,” relating to formulation of subdistrict plans, upheld as permissible); Caloosa Property Owners Association, Inc. v. Department of Environmental Regulation, 462 So.2d 523, 526 (Fla. 1st DCA 1985) (DER’s interpretation of sections 403.087 and 403.088, Florida Statutes (1983), as allowing it to *184 grant dredge and fill permits where the permitted activity will result in “increased, albeit, negligible,” pollution discharges into state waters, was a permissible one).
Appellants’ arguments questioning Port Bougainville’s satisfaction of the requirements of Rule 17-4.29(6)(a), Florida Administrative Code (noninterference with conservation of fish, marine and wildlife or other natural resources, etc.) are also unavailing, since they constitute a mere request for this court to reweigh the evidence presented below. Finally, we discern no reversible error in the hearing officer’s decision to disallow admission of the exhibits appellants proffered at the hearing below, since appellants were able to present essentially the same evidence by means of witnesses.
Accordingly, the final order appealed from is AFFIRMED.
MILLS, SMITH and THOMPSON, JJ., concur.