INSURDATA MARKETING
SERVICES, LLC.,
Plaintiff,

v.

HEALTHPLAN SERVICES,
INC., Defendant/Third–
party Plaintiff,

v.

Fiserv Health, Inc., Third–
party Defendant.

No. 801CV2342–T23TBM.

United States District Court,
M.D. Florida,
Tampa Division.

Jan. 10, 2005.

Thomas P. Barber, Carlton Fields, P.A., Peter B. King, Fowler White Boggs Banker, P.A., Tampa, FL, for Plaintiffs.

John David Emmanuel, Fowler White Boggs Banker, P.A., Tampa, FL, for Plaintiff. and Defendants.

Gary Hansen, Katherine M. Wilhoit, Oppenheimer, Wolff & Donnelly, LLP, Minneapolis, MN, Benjamin H. Hill, IV, Akerman, Senterfitt & Eidson, P.A., Tampa, FL, for Defendants.

## ORDER

MERRYDAY, District Judge.

Insurdata Marketing Services, LLC, ("IMS") sues (Doc. 52) Healthplan Services, Inc., ("HPS") and Fiserv Health, Inc., ("Fiserv") for breach of contract.[1] IMS moves (Doc. 76) for partial summary judgment and asserts that HPS's failure to honor the arbitral award constitutes breach of an arbitration agreement. HPS moves (Docs.80) for partial summary judgment and asserts that no breach occurred because no enforceable contract exists. Finally, Fiserv moves (Doc. 96) for summary judgment and asserts that Fiserv assumed no obligation to IMS when Fiserv entered into an asset purchase agreement with HPS.

## BACKGROUND

HPS provides third-party administration services for customers' employee health plans. In June, 1992, pursuant to the "Special General Agent Agreement," IMS became HPS's exclusive "Special General Agent for the marketing, solicitation and

---

1. HPS asserted third-party claims against Fiserv (Doc. 43) for indemnity and unjust enrichment. Fiserv counterclaimed against HPS (Doc. 65). HPS and Fiserv settled their respective claims.

sale of contracts for self-funded administration services."[2] As HPS's sales agent, IMS brought new clients to HPS and received a monthly commission based on the number of insureds ("lives") serviced through new clients.

In June, 1996, IMS and HPS agreed to arbitrate a dispute that arose when HPS purported to terminate the Special General Agent Agreement. IMS and HPS executed a detailed agreement for binding arbitration (Doc. 1, Ex. A). In August, 1997, following arbitration proceedings and pursuant to the arbitration agreement, the arbitration panel entered a "Decision and Award" (the "award"), which both determines that HPS's termination of the Special General Agent Agreement was "impermissible" and requires HPS to pay IMS a monthly commission. In compliance with the award, HPS timely paid the required monthly commission from 1997 until October, 2000 (Docs. 78, Ex. H & 80), when HPS unilaterally ceased paying. Apparently, HPS's unilateral cessation of the payments required by the arbitral award arose from the August, 2000, purchase by Fiserv of HPS's "Harrington Division," which managed the contracts generating the monthly commission to IMS. HPS neither sought nor received IMS's consent to the purported assignment by HPS to Fiserv of HPS's obligation to pay a monthly commission to IMS.

IMS moves (Doc. 76) for partial summary judgment and argues that HPS breached the arbitration agreement by failing to remit to IMS after October, 2000, the monthly commission required by the arbitral award. HPS moves (Doc. 80) for partial summary judgment and argues that no breach of the arbitration agreement

occurred because the arbitration agreement terminated upon entry of the arbitral award. HPS further argues that no payment obligation existed due to IMS's failure to confirm the award.

## DISCUSSION

■ "Public policy favors arbitration as an efficient means of settling disputes, because it avoids the delays and expenses of litigation." *Bill Heard Chevrolet Corp., Orlando v. Wilson,* 877 So.2d 15 (Fla. 5th DCA 2004). An award conclusively binds the parties by principles of res judicata and provides a valid and enforceable determination of the arbitrated issues. *Greenblatt v. Drexel Burnham Lambert, Inc.,* 763 F.2d 1352, 1360 (11th Cir.1985) ("When an arbitration proceeding affords basic elements of adjudicatory procedure ... the determination of issues in an arbitration proceeding should generally be treated as conclusive in subsequent proceedings"); *see also* Doemke, 1 *Doemke on Commercial Arbitration* § 36.2 (2003) ("An arbitration award is accorded the benefits of the doctrine of res judicata in much the same manner as a judgment of a court."). Both the Federal Arbitration Act and the Florida Arbitration Code codify the policy favoring arbitration and provide summary confirmation of final and binding arbitral awards. 9 U.S.C. § 1, et. seq.; 5 Fla. Stat. 682.

In addition to summary confirmation pursuant to federal or state statute, enforcement of an arbitral award is available by a civil action on the award. *Kentucky River Mills v. Jackson,* 206 F.2d 111, 120 (6th Cir.1953), *cert. denied,* 346 U.S. 887, 74 S.Ct. 144, 98 L.Ed. 392 (1953) ("[a]

---

**2.** IMS formerly operated as Self–Funded Strategies. For present purposes, "IMS" incorporates the entity formerly known as Self–Funded Strategies.

party may, therefore, apply to the court for an order confirming the award, but is not limited to such remedy. Before the enactment of the United States Arbitration Act, an action at law on the award was the proper method of enforcing it."); *see also* Macneil, Speidel, and Stipanowich, 4 *Federal Arbitration Law* § 38.2.2.2 (1994) ("The common law method of enforcement consisted of bringing a contract action on the award."). Failure to confirm pursuant to statute erects no bar to enforcement of an arbitral award in an action at law on the award. *see* Macneil, Speidel, and Stipanowich, 4 *Federal Arbitration Law* § 38.2.2.2 (1994) ("Given that the common law remedy remained readily available, the drafters [of the FAA]...view[ed] confirmation [under § 9] as an extra remedy available to the parties.").

Section 9 of the Federal Arbitration Act states in pertinent part:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in *sections 10* and *11* of this title.

Section 9 is conspicuously optional; the first word is "if." Section 9 states that "if" the parties to an arbitration agreement provide for prompt reduction to judgment of the resulting award, either party (not just the "winner") may (not "must" or "shall") procure a judgment by mere "application" in the district court. The term ascribed in the statute to this optional,

contract-based, and expedited resort to court, along with the accompanying right to "apply" for an order, is "confirmation." In short, if the parties agree (explicitly or implicitly), application for confirmation and judgment is available as a speedy remedy to complement the otherwise available, but more ponderous, remedy of complaint and judgment. *Booth v. Hume Publishing, Inc.*, 902 F.2d 925 (11th Cir.1990). The arbitration statute provides also for expedited service of the application for confirmation.

Sections 9 and 10 provide an opportunity for either party to expeditiously "confirm" an award without respect to whether "enforcement" is necessary. Confirmation offers this opportunity, even if no breach (that is, an occasion warranting enforcement) has occurred. Also, Section 10 of the Federal Arbitration Act specifies the exclusive defenses to an application for confirmation. Summarily stated, the exclusive defenses to confirmation are fraud in procuring the award, corruption in an arbitrator, misconduct in the timing or execution of the proceedings, or voidness of the award because the arbitrators exceeded their arbitral jurisdiction. (Injured non-parties may apply for relief under Section 10(c), under circumstances irrelevant to the present circumstances.) Section 10's exclusive defenses to confirmation are forever barred if not asserted within three months after the arbitral award. *Cullen v. Paine, Webber, Jackson & Curtis*, 863 F.2d 851 (11th Cir.1989).

In other words, Sections 9 and 10 of the Federal Arbitration Act allow, through the convenient but not exclusive device of confirmation, the reduction of a non-judicial arbitral award to the form of a readily enforceable judgment, which permits execution and levy, fixes priority among credi-

tors in some instances, places third parties on constructive notice of the judgment's contents, and subjects a judgment debtor to prompt supplemental proceedings, such as deposition in aid of execution, garnishment, levy, and the other formidable tools of collection. Section 10's "three month rule," as *Cullen* calls it, enhances certainty in arbitral enforcement by forcing a party to immediately announce any available defense to the arbitral award or incur permanent waiver of the unannounced defense.

However, the Federal Arbitration Act contains no provision forbidding resort to enforcement by the mechanism of either a common law action on the award or a claim for breach of the term in the arbitration agreement that requires compliance with the arbitral award. Oehmke, 3 *Commercial Arbitration* § 134:6 (2004) ("Under common law breach of contract, the logic is that the parties have contracted to arbitrate and implicit in this is that an award will be issued that binds all contracting parties. If a party then arbitrates, loses and refuses to adhere to the award, then that constitutes breach of the very contract in which the arbitration clause is found.").

HPS contends that paragraph 57 of the arbitration agreement forbids IMS to seek enforcement of the arbitral award absent judicial confirmation. Paragraph 57 of the arbitration agreement states:

> Consent is given by the parties for the Federal District Court for the Middle District of Florida to confirm the arbitration award and enforce such award by entry of judgment or by any other legal remedy, and that such award shall be final and binding as to the parties and issues encompassed in this Agreement. In the event such Federal District Court does not have jurisdiction,

any party may file the arbitration award with any court of competent jurisdiction.

This provision memorializes the parties' consent to judicial confirmation and enforcement of the arbitral award (but, of course, the provision contains no clause in the nature of a covenant not to sue purporting either to bar a civil suit for enforcement or to require confirmation as a prerequisite to enforcement). Further, the arbitration agreement provides for a final and binding award, which "is sufficient to imply consent to the entry of judgment on an arbitration award." *Booth*, 902 F.2d at 930 (citing *Milwaukee Typographical Union No. 23 v. Newspapers, Inc.*, 639 F.2d 386, 389–90 (7th Cir. 1981)).

IMS bases this breach of contract claim not expressly on the arbitral award but derivatively on breach of the arbitration agreement, in which the parties agreed both to arbitrate and to remain bound by the award (otherwise the arbitration becomes mere ruse, mere illusion). More specifically, IMS claims that, after performing diligently in compliance with the arbitral award for three years, HPS breached paragraph 32 of the arbitration agreement by refusing to continue paying a monthly commission to IMS. Paragraph 32 of the arbitration agreement provides:

> It is agreed that the parties, their agents, officers, directors, employees, agents' representatives, successors, and assigns shall, on their respective parts, abide by, perform, and keep the award to be rendered in accordance with the terms of this Agreement after the arbitration proceedings pursuant to this Agreement.

■ In response, HPS argues that no breach occurred because the arbitration

agreement, including the agreement in paragraph 32 to "abide by, perform, and keep" the arbitral award, terminated pursuant to paragraph 66 of the same agreement upon entry of the arbitral award. Paragraph 66 of the arbitration agreement provides:

> Unless otherwise extended by the parties in writing, this Agreement terminates upon the earlier of: (1) the issuance of an award by the Panel in accordance with the terms of this Agreement and the expiration of any rehearing period thereafter, or (2) at 12:01 a.m. CST on June 30, 1997. However, this Agreement will not terminate on said date so long as each party is diligently attempting in good faith to fulfill its obligations under the terms of this Agreement.

Although paragraph 66 obviously terminates the arbitration agreement (resulting in no commitment by the parties to arbitrate future disputes), termination of a contract operates only as a prospective remedy and fails to extinguish retroactively the vested rights and obligations of a party. 17B C.J.S. Contracts § 421; *Sid Richardson Carbon & Gasoline Co. v. Interenergy Resources, Ltd.*, 99 F.3d 746,

753–754 (5th Cir.1996) (termination of an agreement fails to affect rights and obligations that accrue during the life of the contract). Accordingly, paragraph 32 formally commits the parties to remain bound by the arbitral award and paragraph 66 of the arbitration agreement fails to affect HPS's obligation to honor the bargained-for award, an obligation that arose upon the effectiveness of the arbitration agreement and attached irretrievably upon issuance of the award.[3] In fact, Section 2 of the Federal Arbitration Act precludes arguments, such as HPS's argument in this case, by specifying that "... an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal shall be valid, *irrevocable*, and *enforceable* ...." (emphasis supplied.) In short, an arbitration provision survives termination of the contract and continues to require arbitration of disputes arising from the pertinent contract. This agreement to "abide by, perform, and keep" the arbitral award is both an explicit and implicit component of the irrevocable arbitration agreement between IMS and HPS. As Section 2 provides, the arbitration provision remains both irrevocable and enforceable, the putative termination notwithstanding.[4]

**3.** Rescission, not termination, operates retrospectively to extinguish a contract *ab initio*. *Sid Richardson Carbon & Gasoline Co.*, 99 F.3d at 753 (rescission "operates retroactively to restore the parties to the *status quo ante*"). Of course, the arbitration agreement contains no right of rescission, retroactively voiding the obligation to conform to the arbitral award; such a clause would be nonsensical and absurd, creating a right to arbitrate without an enduring commitment to the arbitral result.

**4.** If a contract contains an arbitration clause, the arbitration clause survives an effective termination of the contract in which the arbitration clause appears. The result of the sur-

vival of the arbitration clause, i.e. the result of the statutory (and common law) irrevocability of the arbitration clause, is that any dispute *arising from the terminated contract and within the purview of the arbitration clause* (but not every or any dispute from whatever source between the contracting parties forever) remains subject to the arbitration clause. *Mississippi Insurance Mgrs., Inc. v. Providence Washington Ins. Co.*, 72 F.Supp.2d 689 (S.D.Miss.1999) (and cases cited). Otherwise a breaching party would enjoy the bully option of both solemnly contracting for arbitration and, upon occurrence of a breach, cavalierly proclaiming the contract, including the arbitration clause, terminated—and smugly skipping away. So, for example, in the in-

Further, HPS's subsequent conduct evidences HPS's intent to remain bound by paragraph 32 of the arbitration agreement and the arbitral award. HPS admittedly paid a monthly commission in accord with the award from 1997 until October, 2000. (Doc. 78, Ex. H). HPS never objected to the award. Consistently honoring the arbitral award, HPS never invoked paragraph 66 of the agreement to avoid a commission. HPS stopped paying IMS commissions purportedly only after HPS sold the Harrington Division to Fiserv and unilaterally renounced the obligation to pay IMS. HPS's performance in accord with paragraph 32 of the award for more than three years further establishes HPS's intent to "abide by, perform, and keep the award" throughout the payment schedule commanded by the award.[5]

■ Finally, Fiserv moves for summary judgment and argues that Fiserv never acquired HPS's obligation to pay a monthly commission to IMS. Pursuant to Rule 56(c), Federal Rules of Civil Procedure, summary judgment results "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law."

The arbitration agreement and arbitral award entitle IMS to a monthly commission from HPS. Whether HPS retained the commission obligation or whether Fiserv acquired the commission obligation when Fiserv purchased HPS's Harrington Division remains a question of fact. The record fails to show convincingly that Fiserv is entitled to relief on its motion for summary judgment. HPS's responses to interrogatories (Doc. 48) and the affidavits submitted in support of Fiserv's motion for summary judgment (Docs. 99 & 100) present competing evidence regarding the sale of the Harrington Division. Further, the deposition testimony of Fiserv's corporate representative (Doc. 104, Ex. C) indicates that Fiserv may have initially paid a monthly commission to IMS pursuant to the arbitral award.

### CONCLUSION

In this action, the parties entered a business contract and, upon emergence of a

stance of a collective bargaining agreement containing an arbitration clause, a dispute arising during the life of the agreement—for example, a dispute concerning computation of premium pay to a union member for a "call-out to work"—remains subject to arbitration after the termination of the collective bargaining agreement.

5. Even if HPS could fashion a tenable claim that the parties, from the moment they solemnized the arbitration agreement, intended to require confirmation and to preclude an action for enforcement or breach of contract or intended to create a non-binding arbitral award, IMS's and HPS's subsequent dealings in accord with the arbitral award adopted the award by course of dealing, modified the parties' contract and arbitral relations, and effected a waiver of HPS's right to enforce any provision of the agreement that might render the arbitral award non-binding. *See Pan American Engineering Co., Inc. v. Poncho's Construction Co.,* 387 So.2d 1052, 1053 (Fla. 5th DCA 1980) (holding that the parties to a contract can modify the terms of the contract by their subsequent dealings); *Fletcher v. Laguna Vista Corp.,* 275 So.2d 579, 581(Fla. 1st DCA 1973) (holding that "the parties through their course of dealings ... interpreted and modified the [contract]."); *Charlotte Harbor N. Ry. Co. v. Burwell,* 56 Fla. 217, 48 So. 213 (Fla.1908) (a contractual provision may be waived by the parties' subsequent course of dealing); 11 Richard A. Lord, *Williston on Contracts* § 32.14 (4th ed. 1999) ("Even when the terms of a contract are clear and unambiguous, the subsequent conduct of the parties may evidence a modification of the contract.").

dispute, an arbitration agreement. An arbitral award resulted. One party elected not to pursue within one year the option of statutory confirmation of the arbitral award; the other elected to assert none of the legally available defenses to the arbitral award within the confines of the "three month rule." In due course, a dispute developed that implicates the arbitral award. The aggrieved party (the party not receiving the expected money) elected to vindicate the arbitral award by a suit for breach of the arbitration agreement rather than by the more familiar suit to enforce the arbitral award. Although this choice of remedy is odd (and only unsatisfyingly explained), the remedy remains available, notwithstanding the complementary availability of another remedy. Although the form of this action has resulted in some additional labor and attendant (semantic) confusion, the choice of remedy here is one of form more than substance and the claim for breach of contract persists, confusion and indirection aside.

HPS breached the arbitration agreement in October, 2000, when HPS violated the binding arbitral award by terminating the monthly commission. Accordingly, IMS's motion for partial summary judgment (Doc. 76) is **GRANTED**, and HPS's motion for partial summary judgment (Doc. 80) is **DENIED**. The Clerk is directed to enter a judgment in favor of IMS and against HPS on the second count of IMS's amended complaint.[6]

Fiserv fails to meet the burden to sustain a motion for summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (the moving party bears the initial burden of showing an absence of evidence supporting the non-moving party's case). Accordingly, Fiserv's motion for summary judgment (Doc. 96) is **DENIED**.

---

6. This order resolves count two of the plaintiff's complaint concerning HPS's liability for breach of the agreement. A dispute remains concerning the amount of damages owed by HPS to IMS as a result of the breach.