**SEAFARERS INTERNATIONAL UNION OF NORTH AMERICA, Plaintiff-Appellant,**

v.

**NATIONAL MARINE SERVICES, INC., et al., Defendants-Appellees.**

No. 86–3321.

United States Court of Appeals, Fifth Circuit.

June 29, 1987.

Louis L. Robein, Jr., William Lurye, Gardner, Robein & Healey, Metairie, La., for plaintiff-appellant.

D. Michael Linihan, McMahon, Berger, Hanna, Linihan, Cody & McCarthy, St. Louis, Mo., Terrence C. Forstall, Courtenay, Grace, Forstall & Hebert, New Orleans, La., for Nat'l Marine.

Harry A. Rosenberg, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., for Compass Marine.

Before BROWN, REAVLEY and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

· National Marine Services, Inc. ("National Marine") sold off its tugboat operation and laid off its employees the day after the expiration of the collective bargaining agreement between National Marine and Seafarers International Union ("SIU"), which represented the laid off workers. SIU claimed that the sale and layoff was a subterfuge that violated the subcontracting provisions of the expired agreement and sought arbitration under the arbitration clause of the expired agreement.

SIU now appeals from the district court's denial of its motions to compel arbitration and its motion for an injunction prohibiting the sale and layoff. 639 F.Supp. 1283. Because it has been rendered moot, we dismiss SIU's appeal from that part of the district court's order denying injunctive relief. However, since we find that the district court erred by denying SIU's motion to compel arbitration, we reverse its judgment.

I

National Marine is engaged in the barge transportation industry, operating a large

fleet of barges primarily for transporting liquid petroleum products. National Marine formerly operated about eighteen towboats in connection with its barge operations. SIU is an unincorporated labor organization that represents employees of National Marine who were laid off when National Marine sold fourteen of its towboats to the defendant-appellee, Compass Marine Propulsion, Inc. ("Compass"). Compass is also engaged in the barge transportation industry, specializing in the towing business.

National Marine and SIU were parties to a collective bargaining agreement which was effective between October 9, 1982, and October 8, 1985. The agreement contained a provision barring National Marine from subcontracting out work except under certain limited circumstances.[1] The agreement also contained an extremely broad arbitration clause.[2]

In 1985, while experiencing financial difficulties, National Marine decided to sell its tugs in order to streamline its operations and raise cash. It contracted with Compass to sell fourteen of its eighteen tugs, effective October 9, 1985, for $5,275,000. At the same time National Marine and Compass also entered into a towage contract whereby Compass agreed to dedicate the tugs to move National Marine's barges. In a letter dated September 26, 1985, National Marine informed SIU of its agreement with Compass and stated that as a result of the transactions all bargaining unit personnel (these workers were represented by the union) would be laid off permanently on October 8, 1985, at the expiration of the collective bargaining agreement. On September 27, 1985, pursuant to a collective bargaining agreement

between the parties (also called "the agreement"), the SIU filed grievances challenging the sale of the tugs and the layoff of its members. Its grounds were that the sale of the tugs was a sham and the sale and towage agreement constituted a subcontracting of bargaining unit work in violation of the collective bargaining agreement and that the layoff of its members was a violation of the recognition clause of the collective bargaining agreement. On October 4, 1985, the SIU demanded arbitration of its September 27 grievances pursuant to the binding arbitration provisions of the collective bargaining agreement. National Marine refused to submit to arbitration because, among other reasons, the collective bargaining agreement, by its terms, was effective only from October 9, 1982, through October 8, 1985, and therefore the sale and the layoffs would not occur until after its expiration.

## II

On October 7, SIU, the plaintiff-appellant, filed an action against National Marine and Compass under section 301(a) of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 185(a). In its complaint, SIU sought:

(1) An order compelling National Marine to submit the SIU's grievances over National Marine's proposed sale to binding arbitration, and

(2) An injunction prohibiting National Marine and the defendant-appellee from effectuating the sale of the tugs and prohibiting National Marine from laying off bargaining unit employees pending arbitration of the SIU's grievances over the proposed sale.

---

1. The subcontracting clause of the agreement provides:
   The Company shall not subcontract out any work which is customarily performed by the Union unless either:
   A. All employees of the Company who are available for employment are employed and the Company is unable to obtain men from the Hiring Hall or the Harry Lundeberg School of Seamanship; or
   B. No boat of the Company is available for the performance of said work. In no such

case shall the Company subcontract out any work for more than one (1) year.

2. The arbitration clause provides:
   All complaints, disputes or grievances arising between the parties hereto relating to or in connection with or involving questions of interpretation or application of any clause of this Agreement, or any acts, conduct or relations between the parties, directly or indirectly, shall be processed pursuant to this Article.

On October 30, and November 7 National Marine and Compass respectively filed their answers to SIU's complaint.

On October 8, the district court held a hearing on SIU's request for a temporary restraining order. The district court denied SIU's request for temporary injunctive relief by order dictated into the record.

On October 30, the district court conducted a trial on SIU's request for a preliminary injunction and the matter was then submitted for disposition.

On March 28, 1986, by minute entry, the district court ordered that SIU's complaint for injunctive relief be dismissed, and on July 18, the district court issued its written opinion denying SIU's complaint for injunctive relief. The district court held that SIU's grievances did not involve contractual rights under the collective bargaining agreement, but rather involved statutory rights under the National Labor Relations Act, §§ 7 and 8, as amended, 29 U.S.C. §§ 157, 158. The district court concluded that the proper forum for adjudication of those statutory rights was the National Labor Relations Board, not the federal district court.

### III

■ As a threshold matter, we must first decide whether this appeal should be dismissed on mootness grounds. We note that the actions that SIU had sought to enjoin (the sale of the fourteen tugboats and the accompanying layoff of workers) have already taken place. An appeal from a denial of a motion for preliminary injunction is rendered moot when the act sought to be enjoined has occurred. *Marilyn T., Inc. v. Evans*, 803 F.2d 1383, 1384 (5th Cir.1986); *Thournir v. Buchanan*, 710 F.2d 1461, 1463 (10th Cir.1983); *In re Cantwell*, 639 F.2d 1050, 1054 (3d Cir. 1981). The rationale for this rule was explained by the court in the *Marilyn T.* decision, which held that once the action that the plaintiff sought to have enjoined has occurred, the case is mooted because "no order of this court could affect the parties' rights with respect to the injunction we are called upon to review." 803

F.2d at 1384 (quoting *Honig v. Students of the California School for the Blind*, 471 U.S. 148, 149, 105 S.Ct. 1820, 1821, 85 L.Ed.2d 114 (1985)). The court went on to explain that the appeal from denial of injunctive relief is mooted even where the court could fashion other relief for the appellant:

Marilyn T. maintains, nevertheless, that its appeal is not moot because it continues to suffer harm from the loss of its license. It argues that this court can fashion effective relief by declaring the suspension *and* revocation procedures unconstitutional and ordering reinstatement of its license. These concerns are not properly before the court, however. This appeal is from the denial of a preliminary injunction. The sole issue concerning the denial is whether the initial suspension should have been enjoined. Whether the later revocation was proper has not yet been decided by the district court. Nor has the district court decided whether Marilyn T. is entitled to damages for either the suspension or revocation. To grant the relief that Marilyn T. now requests, we would have to decide these issues. Because these issues have yet to be resolved by the district court, they are not before us on appeal.

*Marilyn T.*, 803 F.2d at 1383–84.

Nevertheless, there is an exception to the mootness doctrine. A case that is otherwise moot can be decided if: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subject to the same action again." *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350 (1975); *Marilyn T., Inc.*, 803 F.2d at 1384.

Although the first prong of this test has been met in this case because the transaction which SIU sought to enjoin occurred prior to argument of this appeal (SIU did not seek a stay pending appeal) the second prong has not been met. National Marine's sale of virtually the whole of its tugboat fleet to Compass is a one-time occurrence.

■ Since the action that SIU sought to enjoin has already occurred, and since there is no reasonable expectation that SIU will be subject to the same action again, we dismiss SIU's appeal from the district court's denial of its motion for a preliminary injunction.

This action does not dispose of the whole appeal, however, because SIU also sought from the district court an order compelling National Marine to arbitrate SIU's grievance. And because SIU makes a colorable argument that it was and is entitled to seek some relief through arbitration, we do not believe that SIU's appeal from the denial of its arbitration request is mooted. Accordingly, we will exercise our jurisdiction to review the district court's order insofar as it deals with SIU's motion to compel arbitration.

IV

Turning to the merits of this appeal, we must resolve two related issues: (1) whether a federal court has the power to compel arbitration in this case, and (2) if so, whether the dispute between SIU and National Marine is arbitrable. We hold that both of these issues must be resolved in favor of arbitration.

The district court concluded that arbitration was unavailable in this case because arbitration is a creature of contract and since the collective bargaining agreement that contained the arbitration clause had expired, any duty to arbitrate had also expired. Although noting that the Supreme Court in *Nolde Bros, Inc. v. Local No. 358 Bakery & Confectionery Workers Union*, 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977), had held that federal courts may compel arbitration even after expiration of the collective bargaining agreement, the district court nevertheless held that that decision applied only to arbitration claims involving accruable rights under the collective bargaining agreement, and hence did not affect this case. The district court's opinion reflects intelligence and fairness coupled with an understanding of the principles of contract law and arbitration. But we cannot square the district court's deci-sion with our own understanding of *Nolde*, and therefore must reverse.

■ Contrary to the district court's holding, we believe that the Supreme Court's decision in *Nolde* must be read as broadly holding that the expiration of a collective bargaining agreement does not extinguish the duty to arbitrate disputes under the agreement. Our reading of *Nolde* is based upon both the language of the opinion and the history of the case. In *Nolde*, the employer closed down one of its plants after the collective bargaining agreement between it and the union representing the employees at the plant had expired and after negotiations for a new agreement had failed. The employer refused to give severance pay to the employees at the closed plant although severance pay was specifically provided for in the expired collective bargaining agreement. The district court held that since the severance pay was a creature of contract, the employees' right to it expired with the collective bargaining agreement. *Local 358, Bakery & Confectionery Workers, Ind. U. v. Nolde Bros., Inc.*, 382 F.Supp. 1354, 1358 (E.D.Va.1974). In addition, the district court held that the duty to arbitrate is created by contract and "no obligation to arbitrate a labor dispute arises solely by operation of law." *Id.* at 1359 (quoting from *Gateway Coal Co. v. U.M.W.*, 414 U.S. 368, 374, 94 S.Ct. 629, 635, 38 L.Ed.2d 583 (1974)). The Fourth Circuit reversed. *Local No. 358, Bakery & Confectionery Workers, Ind. U. v. Nolde Bros., Inc.*, 530 F.2d 548 (4th Cir.1975). The court of appeals first held that the district court erred because it first determined whether the company's severance pay obligations survived the contract when the court should have first determined whether or not the company's duty to arbitrate the severance pay issue survived the contract. *Id.* at 550. The court then determined that the duty did survive because, the court concluded, when a dispute turns on whether parties intended certain accruable rights to be enjoyable even after contract expiration, the dispute must be arbitrated if the contract provided for arbitration of such disputes. *Id.* at 552. The

Fourth Circuit's position was essentially the one that the appellees and the district court in this case have taken, since the Fourth Circuit also noted: "[o]ur decision should not be read as disapproving those cases that hold arbitration unavailable for resolution of individual employee grievances, or disputes involving nonaccruable rights, that arise after expiration of a collective bargaining agreement." *Id.* at 553.

The Supreme Court affirmed, but on a different basis, *Nolde Bros., Inc. v. Local No. 358 Bakery & Confectionery Workers Union,* 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977). Citing the strong, established federal policy favoring arbitration, as well as the fact that the very presence of an arbitration clause denotes the parties' preference for arbitration over adjudication, the Court held that as a general rule of interpretation, arbitration clauses are presumed to govern grievances under the collective bargaining agreement that occur *after* the expiration of the agreement, unless the arbitration clause states otherwise:

> [T]he parties' failure to exclude from arbitrability contract disputes arising after termination, far from manifesting an intent to have arbitration obligations cease with the agreement, affords a basis for concluding that they intend to arbitrate all grievances arising out of the contractual relationship. *In short, where the dispute is over a provision of the expired agreement, the presumptions favoring arbitrability must be negated expressly or by clear implication.*

430 U.S. at 255, 97 S.Ct. at 1074 (emphasis added).

The Court implicitly rejected the narrower approach followed by the Fourth Circuit (which National Marine urges this court to adopt), since, although squarely presented as an issue, the Court did not draw any

distinction between disputes involving rights that accrue and disputes involving right that do not accrue under the collective bargaining agreement. Had the Court decided to base its decision on such a distinction, it could have easily adopted the Fourth Circuit's approach, which it had before it. But the Court chose not to do so. We therefore reject National Marine's contention that the *Nolde* decision applies only to rights that accrue under the collective bargaining agreement.

Our conclusion is in accordance with decisions by the Third and Ninth Circuits. In *Federated Metals Corp. v. United Steelworkers,* 648 F.2d 856 (3d Cir.1981), the court stated:

> We do not believe that the somewhat esoteric determination that the disputed right to a particular benefit has vested or accrued should control the decision whether the duty to arbitrate the dispute survives contract termination. When the parties have agreed to a broad arbitration clause, the duty to arbitrate survives termination of the agreement if the dispute arises under the expired agreement; when the parties have agreed to a narrow arbitration clause, the duty to arbitrate survives if the dispute is over one of the specified arbitrable subjects *and* arises under the expired agreement. It is not necessary that the disputed right have vested because there is nothing to prohibit the parties from agreeing that certain benefits might accrue after the contract has expired.

*Id.* at 861.

The Ninth Circuit has also explicitly rejected the position that the duty to arbitrate survives only when the grievance involves "rights undeniably *accruing* under the contract *prior to termination.*" *Local Joint Executive Board v. Royal Center, Inc.,* 796 F.2d 1159 (9th Cir.1986).[3]

---

**3.** National Marine cites the Eighth Circuit's narrow reading of *Nolde* in *Chauffeurs, Teamsters and Helpers v. C.R.S.T., Inc.,* 795 F.2d 1400 (8th Cir.1986) (en banc), in support of its position. Although it is true that the decision's reading of *Nolde* differs from ours, it does not follow that the Eighth Circuit would arrive at a different result in this case. The Eighth Circuit based its

conclusion that arbitration was unavailable on its findings that (1) the dispute was based wholly on events that occurred after expiration of the collective bargaining agreement and (2) the disputed right did not occur within a reasonable time after expiration of the agreement. Neither of these factors is present in this case. The dispute between National Marine and SIU in-

Our decision is also in accord with our prior ruling in *International Brotherhood of Boilermakers v. Delta Southern Co.*, 602 F.Supp. 625 (M.D.La.1985), *aff'd* 782 F.2d 1038 (5th Cir.1985) (no published opinion). In that case the district court read *Nolde* as creating a broad presumption in favor of arbitration. 602 F.Supp. at 629. The district court rejected the defendant's contention that the *Nolde* holding was limited to disputes that could have been arbitrated before the expiration of the collective bargaining agreement. *Id.* In an unpublished opinion, this court affirmed.

■ The scope of the rule articulated by the Supreme Court in *Nolde* is broad: disputes grounded on a collective bargaining agreement containing an arbitration clause are arbitrable even after expiration of the agreement unless the arbitration clause states otherwise. Applying this rule to this case, it is clear that the duty to arbitrate was not extinguished by the expiration of the collective bargaining agreement. The arbitration clause agreed to by SIU and National Marine, which is as broad as any that we have seen, makes no mention of the effect of expiration of the agreement on a right to arbitrate:

> All complaints, disputes or grievances arising between the parties hereto relating to or in connection with or involving questions of interpretation or application of any clause of this Agreement, or any acts, conduct or relations between the parties, directly or indirectly, shall be processed pursuant to this Article.

We must therefore conclude that the district court erred when it held that the expiration of the collective bargaining agreement ended National Marine's duty to arbitrate grievances under the agreement.

V

■ Having determined that National Marine remained under a duty to arbitrate grievances under the collective bargaining agreement after its expiration, we now turn to the issue of whether SIU's grievances against National Marine are arbitrable. We hold that they are.

Although the question of arbitrability is a matter for judicial determination, *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 106 S.Ct. 1415, 1417, 89 L.Ed.2d 648 (1986), our inquiry is limited. An order to arbitrate a grievance "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the dispute. Doubts should be resolved in favor of coverage." *AT & T Technologies*, 106 S.Ct. at 1419 (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)).

SIU's position is that National Marine's sale and towage agreements with Compass, along with the accompanying layoffs of tugboat workers, violated the collective bargaining agreement's recognition clause [4] as well as the agreement's restric-

---

volved at least in part National Marine's sale and towage agreements with Compass, which occurred while the collective bargaining agreement was still in force. The court in *Chauffeurs* recognized that disputes that relate to events occurring while the agreement is still in effect remain arbitrable after the agreement's expiration. 795 F.2d at 1403.

4. The recognition clause provided:

The Company recognizes the Union as the exclusive bargaining representative of all vessel crew personnel and shorebased tankermen except Captains, Relief Captains, Pilots/Mates and Engineers employed on tugboats, towboats, dredges, and/or barges owned or operated by the Company excluding shipyard division personnel (both at the present or at any time during the life of this Agreement by the Company or any of its subsidiaries [whether

so at present or at any time during the life of this Agreement]) as an owner or under a bareboat charter, but the employees included in the bargaining unit for which the Union is recognized and who are covered by this Agreement are sometimes hereinafter referred to as "employees".

The term "subsidiary" shall be deemed to include any waterways transportation entity, owned by the Company.

The Union may, at its discretion at any time, require that such subsidiary execute an Agreement. The failure of the Union to request a subsidiary to sign this Agreement shall not in any way effect the obligations of the Company herein that this does cover and include all the employees on all the vessels described above, whether owned or operated by the Company or any of its subsidiaries.

tions on subcontracting.[5] Specifically, SIU alleges that National Marine's transactions with Compass, which involved selling the tugboat fleet to Compass with Compass's agreeing to use the tugboats to do work for National Marine using Compass employees, were a "sham" deliberately designed to circumvent the restrictions of the agreement's subcontracting and recognition clauses.[6] Having examined the relevant clauses of the collective bargaining agreement, we cannot say with "positive assurance" that they are "not susceptible of an interpretation that covers the dispute" between National Marine and SIU. We therefore hold that SIU's grievances are arbitrable.

National Marine contends that SIU's grievances are not arbitrable for two reasons: (1) the conduct of National Marine to which SIU objects occurred after expiration of the agreement and thus SIU's claim did not "arise under" the collective bargaining agreement, and (2) SIU's claims are devoid of merit. We do not, however, believe that either of these arguments suffices to preclude arbitration.

Although it is true that the sale of the tugboats and the accompanying employee layoffs were not scheduled to occur and did not occur before the expiration of the collective bargaining agreement, SIU complains that conduct occurring prior to the agreement's expiration constituted a breach, specifically the sale and towage agreements between National Marine and Compass. In fact, even before the collective bargaining agreement expired, SIU had instituted its grievances against National Marine and had requested arbitration on grounds that the agreements between National Marine and Compass were already in violation of the collective bargaining agreement. We thus cannot say with "pos-

itive assurance" that, at least to some extent, SIU's grievances did not colorably "arise under" the collective bargaining agreement.

In any event, under *Nolde* whether the conduct complained of occurred during the life of the agreement or after its expiration is not necessarily dispositive of whether a dispute arises under the agreement.[7] *Nolde* itself involved post-contract conduct.

National Marine contends that SIU's claims lack merit. That may be so, but that question is not germane to our inquiry. "[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *AT & T Technologies*, 106 S.Ct. at 1419. This is true even where the claims appear frivolous to the court. *Id.*

We acknowledge that our understanding and application of the Supreme Court's *Nolde* decision is in some tension with general principles of contract law. We frankly do not perceive any traditional legal principles that support the court's broad holding. We believe, however, that the Supreme Court's decision in *Nolde* was driven by a preference for judicial economy through the use of arbitration, and by a belief that labor-management disputes relating to terms of collective bargaining agreements should be addressed by an arbitrator in the first instance.

## VI

For the reasons discussed earlier, SIU's appeal from the denial of a preliminary injunction is dismissed, but the judgment of the district court denying SIU's motion to compel arbitration is reversed. This case is remanded for proceedings consistent with

---

**5.** *See* note 1.

**6.** SIU also claims that the timing of the sale of tugboats to Compass violated a ninety-day notice provision in the agreement. National Marine has agreed to arbitrate this dispute.

**7.** Of course, the layoff of the workers, which occurred after the expiration of the agreement, could not by itself constitute a breach of the agreement, since the agreement had expired.

In order to constitute a breach, the layoff would have to relate back to conduct that occurred while the collective bargaining agreement was still in effect. *See Graphic Communications Union v. Chicago Tribune Co.*, 794 F.2d 1222 (7th Cir.1986); *Local 807, International Brotherhood of Teamsters v. Brinks, Inc.*, 744 F.2d 283 (2d Cir.1984); *O'Connor Co. v. Carpenters Local Union No. 1408*, 702 F.2d 824 (9th Cir.1983).

this opinion and with instructions to enter an order compelling arbitration between SIU and National Marine.

DISMISSED IN PART, REVERSED IN PART AND REMANDED.