**MISSISSIPPI INSURANCE MANAGERS, INC.,**
**Plaintiff,**

v.

**The PROVIDENCE WASHINGTON INSURANCE COMPANY,**
**Defendant.**

No. 3:98–CV–152WS.

United States District Court,
S.D. Mississippi,
Jackson Division.

Jan. 26, 1999.

Luke Dove, Dove & Chill, Jackson, MS, for Mississippi Insurance Managers, Inc., plaintiff.

Walter D. Willson, Wells, Marble & Hurst, Jackson, MS, for Providence Washington Insurance Company, defendant.

## ORDER

WINGATE, District Judge.

Before the court is the motion of the defendant The Providence Washington Insurance Company (hereinafter "Providence") to direct the parties to proceed to arbitration in accordance with the provisions of a general agency agreement. Providence submits this motion pursuant to the Federal Arbitration Act (hereinafter the FAA), Title 9 U.S.C. § 4, which provides in pertinent part that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which save for such agreement would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed...." Providence also asks this court to stay this lawsuit pursuant to Title 9 U.S.C. § 3 which provides in part that "any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration ..., shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement...." The plaintiff Mississippi Insurance Managers, Inc., (hereinafter "MIM") objects to Providence's motion to arbitrate and to stay, arguing that the agreement upon which Providence bases its claim for arbitration has been terminated, and with it the agreement to submit disputes to arbitration.

■ The FAA itself provides no basis for jurisdiction in this case. The FAA creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, but it does not create any independent federal-question jurisdiction under Title 28 U.S.C. § 1331 or otherwise. *Moses H. Cone Memorial Hosp. v. Mercury Construction Corporation,* 460 U.S. 1, 103 S.Ct. 927, 942 n. 32, 74 L.Ed.2d 765 (1983).

■ In order to hear a case brought pursuant to the FAA, a federal district court must have at least one of three types of subject matter jurisdiction: (1) jurisdiction under a specific federal statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331;[1] or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).[2] *See Baltin v. Alaron Trading Corporation,* 128 F.3d 1466, 1469 (11th Cir.1997).

In the instant case the parties are of diverse citizenship. Providence is a Rhode Island corporation, while MIM is a corporation organized under the laws of the State of Mississippi, having its principal place of business in Jackson, Mississippi. According to the complaint, Providence has asserted against MIM a claim in excess of $93,000.00 for fees and expenses incurred in a lawsuit involving both MIM and Providence as defendants. Thus, in the ordinary course of litigation between these parties, this court's subject matter jurisdiction would be predicated on Title 28 U.S.C. § 1332(a) since the parties are of diverse citizenship and the amount in controversy exceeds $75,000.00 exclusive of costs and interest.

■ When a motion to stay proceedings and compel arbitration under Title 9 U.S.C. §§ 1–14 is filed, the district court "may consider only issues relating to the making and performance of the agreement to arbitrate". *Municipal Energy Agency of Mississippi v. Big Rivers Electric Corporation,* 804 F.2d 338, 342 (5th Cir.1986), citing *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.,* 388 U.S. 395, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967). Therefore, this court shall examine the pertinent facts to determine whether the arbitration clause in question is binding on MIM, or whether the duty to arbitrate terminated when the rest of the agreement between the parties allegedly was terminated.

## BACKGROUND

On November 1, 1989, MIM and Providence entered into a general agency agreement which provided that the parties would submit any disputes arising under the agreement to arbitration. The terms of the general agency agreement providing for arbitration are found at paragraphs 16.1, 16.3 and 16.4:

As a condition precedent to any right of action hereunder, in the event of any dispute or difference of opinion hereafter arising with respect to this Agreement, it is hereby mutually agreed that such dispute or difference of opinion shall be submitted to arbitration. One Arbitrator shall be chosen by the Company, the other by the General Agent, and an Umpire shall be chosen by the two Arbitrators before they enter upon arbitration, all of whom shall be active or retired disinterested executive officers of insurance or reinsurance companies. In the event that either party should fail to choose an Arbitrator within thirty (30) days following a written request by the other party to do so, the requesting party may choose two Arbi-

---

1. Title 28 U.S.C. § 1331 provides that "[t]he district courts shall have original jurisdiction of all civil cases arising under the Constitution, laws, or treaties of the United States."

2. Title 28 U.S.C. § 1332(a) provides in pertinent part that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—(1) citizens of different States; ..."

trators who shall, in turn, choose an Umpire before entering upon arbitration. If the two Arbitrators fail to agree upon the selection of an Umpire within thirty (30) days following their appointment, the American Arbitration Association shall be named to appoint the Umpire.

Each party shall bear the expense of one Arbitrator and shall jointly and equally bear with the other the expenses of the Umpire and of the arbitration.

Any arbitration proceedings shall take place at a location mutually agreed upon by the parties to this Agreement. If the parties to this Agreement fail to agree upon a location, such arbitration proceedings shall take place in Providence, Rhode Island.

The general agency agreement's arbitration provisions are broad and encompass all disputes which may arise pursuant to the agreement. The general agency agreement also provides that MIM and Providence will defend, indemnify and hold each other harmless from liability, loss and attorney fees associated with litigation arising from the acts of either party and its employees. Paragraph 13.1 of the general agency agreement states that,

[t]he General Agent hereby agrees to defend, indemnify and hold the Company and the officers, directors, shareholders and affiliates of the Company harmless from and against any and all liabilities, losses, damages, claims or expenses (including, without limitation, reasonable attorneys' fees and costs) sustained or incurred by or imposed on the Company or any of its officers, directors, shareholders or affiliates in any manner resulting from or arising out of any obligations, act, omission or transaction on the part of, created or done by, the General Agent or any employee or agent of the General Agent or any other person for whom the General Agent may be responsible. Likewise, the Company agrees to hold the General Agent harmless on the same basis as

stated in the first sentence of this paragraph.

On January 18, 1994, Bell Insurance Company filed a lawsuit against MIM and Providence. Then, on August 31, 1995, 20 months after the Bell Insurance Company lawsuit was filed, MIM and Providence terminated their general agency agreement pursuant to the terms of a new "Stock Purchase and Related Agreement."

Paragraphs 12.8 and 12.9 of the old general agency agreement, however, provided as follows:

Any termination of this Agreement *shall not affect the rights and obligations of the parties hereto as to transactions, acts or things done by either party prior to the effective date of termination.*

The provisions of Sections 3.1, 3.4, 4.2, 5.1, 6.1, 6.2, 7.1, 8.1, 12 *and 13.1* and, at the sole option of the Company, which option is to be exercised as to all Sections indicated hereinafter solely as a package, Sections 2.6, 3.2, and 4.1, *shall be binding upon the parties subsequent to the termination of this Agreement and shall survive such termination until all obligations are finally and fully discharged.*

So, says Providence, termination of the old general agency agreement did not foreclose the indemnification provision (paragraph 13.1). This provision, says Providence, remained binding on the parties, and did not affect the rights of the parties as to transactions, acts or things done prior to the effective date of termination.

Pursuant to the indemnification agreement contained in paragraph 13.1 of the old agency agreement, Providence, asserting that the litigation with Bell Insurance Company arose out of acts and/or omissions of MIM and its employees, presented MIM with a demand letter on September 26, 1996, asking MIM to indemnify Providence for all legal fees in connection with the Bell Insurance Company litigation. Subsequently, on August 29, 1997, in that same litigation, a jury rendered a verdict

in favor of MIM and Providence. Once again, Providence asked MIM for indemnification pursuant to the indemnification provision of the old general agency agreement. When MIM refused this request, Providence announced its intention to proceed to arbitration with its demand for indemnity made pursuant to the old general agency agreement. Seeking to avoid arbitration of the indemnification issue, MIM filed a complaint in this court on February 24, 1998, asking this court to declare the arbitration clause of the old general agency agreement unenforceable, contending that the arbitration clause had expired upon termination of the old agency agreement.[3] Unpersuaded by MIM's contention that arbitration was no longer a viable recourse, Providence informed MIM on April 14, 1998, that it would seek to stay this litigation and to refer the indemnification issue to arbitration. MIM responded with a motion for a preliminary injunction to enjoin any attempt by Providence to have this matter referred to arbitration. This court, however, found MIM's motion for injunctive relief to be in a procedurally awkward posture since Providence had not yet entered its motion to refer this case to arbitration. So, on May 12, 1998, this court entered an Order (1), declaring MIM's motion for a preliminary injunction to be premature; (2), directing Providence to file the instant motion to stay litigation and refer this case to arbitration; and (3), staying the appointment of arbitrators pending this court's determination of whether the parties are compelled to arbitrate this dispute pursuant to their agreements.

3.  MIM's complaint also seeks adjudication of the indemnification issue, asking this court to find that MIM has no duty to indemnify Providence; that Providence must indemnify MIM; and that MIM has breached no duty to Providence.

4.  The arbitration clause in the *Nolde* case provided as follows:

    Section 1. All grievances shall be first taken up between the Plant Management and the

## ANALYSIS

MIM contends that the general agency agreement containing the parties' duty to arbitrate their disputes is terminated and that arbitration is no longer an option. Providence responds that MIM's duty to indemnify Providence arose under the old agency agreement and continued after termination of that agreement pursuant to its terms. Thus, says Providence, the dispute over indemnification must be arbitrated because this was the way the parties intended for disputes over indemnification to be resolved, and because the new "Stock Purchase and Related Agreement" does not specifically or impliedly nullify the duty to arbitrate disputes involving indemnification.

In *Nolde Brothers, Inc. v. Local No. 358, Bakery & Confectionery Workers Union,* 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977), the United States Supreme Court found a presumption in favor of post-expiration arbitration of all matters unless "negated expressly or by clear implication," stating that this conclusion was limited by the "vital qualification that arbitration was of matters and disputes arising out of the relation governed by contract." *Id.,* 97 S.Ct. at 1074. In *Nolde,* a union brought suit to compel arbitration. Four days after termination of a collective-bargaining agreement, the employer decided to cease operations. The employer settled employee wage claims, but refused to pay severance wages called for in the collective-bargaining agreement. The employer also declined to arbitrate the resulting dispute, contending that the collective-bargaining agreement which provided for arbitration had expired.[4] The union responded that

Shop Steward. If these parties shall be unable to settle the grievance, then the Business Agent of the Union shall be called in, in an attempt to arrive at a settlement of the grievance. If these parties are unable to settle the grievance, the dispute will be settled as called for in Sections 2 and 3 of this Article.

Section 2. In the event that any grievance cannot be satisfactorily adjusted by the procedure outlined above, either of the parties hereto may demand arbitration and shall give

severance wages "were in the nature of 'accrued' or 'vested' rights, earned by employees during the term of the contract on essentially the same basis as vacation pay, but payable only upon termination of employment." *Nolde*, 97 S.Ct., at 1070. The United States Supreme Court agreed with the union, finding that the dispute, although arising after the expiration of the collective-bargaining contract, clearly arose under the terms of that contract. *Id.*, 97 S.Ct. at 1071. The Supreme Court acknowledged that "the arbitration duty is a creature of the collective-bargaining agreement" and that the matter of arbitrability must be determined by reference to the agreement, rather than by compulsion of law. *Id.*, 97 S.Ct. at 1071–1072. However, the Supreme Court also noted that the extensive obligation to arbitrate under the contract in question was not consistent with an interpretation of that contract which would eliminate all duty to arbitrate as soon as the agreement expired. That argument, said the Supreme Court, "would preclude the entry of a post-contract arbitration order even when the dispute arose during the life of the contract but arbitration proceedings had not begun before termination." "The same, would be true," said the Supreme Court, "even if arbitration processes began but were not completed, during the contract's term." *Id.*, 97 S.Ct. at 1072. Significantly, the Supreme Court noted that the failure of the collective-bargaining agreement to exclude contract disputes arising after its termination from arbitration provided a basis for concluding that the parties intended to arbitrate all grievances arising out of their previously existing contractual relationship. *Id.*, 97 S.Ct. at 1074.

In *Seafarers International Union of North America v. National Marine Services, Inc.*, 820 F.2d 148, (5th Cir.), *cert. denied*, 484 U.S. 953, 108 S.Ct. 346, 98 L.Ed.2d 372 (1987), the Fifth Circuit opined that "*Nolde* must be read as broadly holding that the expiration of a collective-bargaining agreement does not extinguish the duty to arbitrate disputes under the agreement." *Id.*, 820 F.2d at 152. However, the Fifth Circuit made no distinction between disputes involving rights that accrued under the contract and disputes involving rights which did not accrue under the contract. The Fifth Circuit's broad interpretation of the *Nolde* decision was abrogated by the United States Supreme Court in the case of *Litton Financial Printing v. N.L.R.B.*, 501 U.S. 190, 111 S.Ct. 2215, 115 L.Ed.2d 177 (1991). In *Litton*, the Supreme Court clarified its *Nolde* decision, stating that, "if a dispute arises under the contract ... in question, it is subject to arbitration even in the post contract period." *Id.*, 111 S.Ct. at 2225. Thus, the Supreme Court exempted from arbitration those disputes which did not arise under the contract in question, unless the parties agreed that such disputes would be resolved by arbitration, noting that a duty to arbitrate may arise from the expired agreement itself. *Id.*, 111 S.Ct. at 2224, citing *Nolde*, 97 S.Ct. at 1071. This holding reaffirmed the Supreme Court's previous pronouncements that arbitration would not be imposed upon parties beyond the scope of their agreement. *Id.*, 111 S.Ct. at 2222.

■ In the instant case Providence argues that the terms of the old general agency agreement requiring arbitration of disputes pertaining to indemnification have survived termination of the agreement. This must be the case, says Providence, where no provision appears in the new "Stock Purchase and Related Agreement"

written notice to the other party of its desire to arbitrate. No individual employee shall have the right to invoke arbitration without the written consent of the Union. The Arbitration Board shall consist of three (3) persons, one selected by the Company and one selected by the Union. The two persons se-

lected shall agree upon a third person who shall act as Chairman of the Arbitration Board.
Section 3. The decision or award of the Arbitration Board, or a majority thereof, shall be final and binding on both parties....

which excludes from arbitration those contract-related disputes arising after termination of the old agency agreement. Furthermore, argues Providence, termination of the old agency agreement, according to its own terms, cannot affect the rights and obligations of MIM and Providence as to transactions, acts or things done by either party prior to the effective date of termination.

This court finds that Providence has the better of this argument. Clearly, the Bell Insurance Company litigation was based on allegations pertaining to the conduct, acts or omissions of either MIM or Providence which occurred prior to the termination of the old general agency agreement. Both Providence and MIM have claimed the right to be indemnified, a right which originally arose from the old general agency agreement, and which was specifically designated by the terms of that agreement to continue even after its termination. No provision of the new "Stock Purchase and Related Agreement" nullifies the duty to arbitrate indemnification disputes, or any other disputes where the conduct of the parties giving rise to a dispute occurred while the old general agency agreement was still in effect.

This court specifically rejects MIM's argument that the failure to incorporate paragraph 16.1 of the old general agency agreement into the new "Stock Purchase and Related Agreement" is a clear expression of the parties' agreement to nullify the duty to arbitrate any disputes after termination of the old agreement. "[T]he parties' failure to exclude from arbitrability contract disputes arising after termination, far from manifesting an intent to have arbitration obligations cease with the agreement, affords a basis for concluding that they intend to arbitrate all grievances arising out of the contractual relationship. In short, where the dispute is over a provision of the expired agreement (in the instant case the right to indemnification), the presumptions favoring arbitrability must

be negated expressly or by clear implication." *Nolde*, 97 S.Ct. at 1074.

In addressing the dispute herein between the parties, this court is mindful that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.... The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Mouton v. Metropolitan Life Insurance Company*, 147 F.3d 453, 456 (5th Cir.1998). The presumption in favor of arbitration is a strong one. *Place St. Charles v. J.A. Jones Construction Company*, 823 F.2d 120, 123 (5th Cir.1987), citing *Moses H. Cone*, 103 S.Ct. at 942.

Therefore, this court finds that the motion of the defendant The Providence Washington Insurance Company brought pursuant to the Federal Arbitration Act, Title 9 U.S.C. § 4, seeking to stay this litigation and to direct the parties to proceed to arbitration in accordance with the provisions of the aforesaid general agency agreement is well taken. The motion is granted.