**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

No. 99-30431

---

VIVIAN TANKSHIPS CORPORATION,

Plaintiff-Appellant,

VERSUS

STATE OF LOUISIANA,

Intervenor-Appellee,

and

CANDIDO CASTRO; I.F. HINGLE, Sheriff of Plaquemines Parish,

Defendants-Appellees.

---

Appeal from the United States District Court
For the Eastern District of Louisiana
(No. 98-CV-1671-T)

---

May 14, 2001

Before POLITZ, BARKSDALE, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge[*]:

Plaintiff-Appellant Vivian Tankships Corporation ("Vivian")

appeals the judgment of the district court in favor of defendants

---

[*] Pursuant to 5ᵀᴴ CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5ᵀᴴ CIR. R. 47.5.4.

Candido Castro and I.F. Hingle.  In ruling against Vivian, the district court found that Louisiana Code of Civil Procedure article 3541 does not violate the Commerce Clause, U.S. CONST. art. I, § 8, cl. 2, or the Due Process Clause of the Fourteenth Amendment, U.S. CONST. amend. XIV, § 2, and that article 3541 is not preempted by the federal vessel documentation regulations at 46 C.F.R. Part 67. Because we find that Vivian's claims are moot, we vacate the judgment of the district court without reaching the issues related to the constitutionality of article 3541, and remand with instructions to dismiss.

I.

Castro claims to have suffered a hernia in 1997 while working on the M/V OVERSEAS VIVIAN ("the vessel"), a United States flagged vessel owned by Vivian.  In March 1998, Castro filed suit in the 25th Judicial District Court for Plaquemines Parish, Louisiana, against Maritime Overseas Corporation ("Maritime"), believing Maritime to be the owner of the vessel.  The court issued a writ of attachment against the vessel pursuant to Louisiana Code of Civil Procedure article 3541.  The vessel was attached by Hingle, the Civil Sheriff of Plaquemines Parish, pursuant to the writ. Maritime posted a bond for the amount in controversy to have the vessel released and, upon proving that it was not the owner of the vessel, successfully moved to have the writ dissolved and the

2

posted bond returned.

In June 1998, after the vessel was released and had sailed out of Louisiana waters, Vivian filed suit against Castro and Hingle in the Eastern District of Louisiana. Against Castro, Vivian sought a declaratory judgment that article 3541 was unconstitutional as a violation of the Commerce Clause and the Due Process Clause, and that it was preempted by 46 C.F.R. Part 67. In addition to declaratory relief, Vivian sought damages against Castro under 42 U.S.C. § 1983 for wrongful attachment, alleging that the court costs, cost of the bond posted in Plaquemines Parish, attorneys' fees, and associated expenses had been accrued as the result of an unconstitutional attachment procedure. Against Hingle, Vivian sought declaratory and injunctive relief based on the alleged unconstitutionality of Louisiana's non-resident attachment provisions, and monetary damages for wrongful attachment. Vivian amended its complaint to drop its claim for monetary damages against Hingle. The State of Louisiana intervened solely to defend the constitutionality of the article. Vivian posted a $200,000 peace bond to prevent the reattachment of its vessel.

Castro amended his state court complaint in July 1998 to name Vivian as the defendant. Castro did not seek a new writ of attachment against the vessel, but exercised jurisdiction against Vivian through regular service of process. Prior to oral argument of the instant appeal in Vivian's federal action, Castro and Vivian

3

reached a settlement of Castro's state court claims, reserving Vivian's right to pursue damages for wrongful attachment in its federal action.

On motion for partial summary judgment, the district court held that article 3541 was neither unconstitutional nor preempted by federal registration requirements. On a subsequent motion for dismissal of Vivian's remaining claims, the district court dismissed Vivian's claim for damages arising from wrongful attachment and rendered final judgment for the defendants, concluding that the prior ruling on the constitutionality of the attachment article settled the question of whether the vessel had been wrongfully attached. Vivian timely filed a notice of appeal.

II.

We may exercise jurisdiction over this dispute only if it is an actual case or controversy. U.S. CONST. art. III, § 2, cl. 1; see also 28 U.S.C. § 2201(a) (explicitly incorporating Article III's case or controversy requirement into statute authorizing declaratory judgment relief); Lawson v. Callahan, 111 F.3d 403, 405 (5th Cir. 1997) (recognizing that Section 2201's "actual controversy" requirement is identical to Article III's case or controversy requirement). This requirement extends to all stages of litigation; if the litigation loses its characteristic of presenting a live controversy between two parties subsequent to its

4

commencement, then we have lost our power to preside over the dispute because it has become moot. Powell v. McCormack, 395 U.S. 486, 496 (1969).

An exception to the mootness doctrine has been recognized for cases that would otherwise be moot but are based on issues "'capable of repetition, yet evading review.'" Super Tire Eng'g Co. v. McCorkle, 416 U.S. 115, 121-22 (1974) (quoting Southern Pac. Terminal Co. v. ICC, 219 U.S. 498, 515 (1911)). The capable-of-repetition-yet-evading-review doctrine operates if "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subject to the same action again." Weinstein v. Bradford, 423 U.S. 147, 149 (1975); see also Seafarers Int'l Union of North America v. Nat'l Marine Servs., Inc., 820 F.2d 148, 151 (5th Cir. 1987), abrogated on other grounds by Litton Fin. Printing Div. v. NLRB, 501 U.S. 190, 197 n.1 (1991). "[T]he capable-of-repetition doctrine applies only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality." City of Los Angeles v. Lyons, 461 U.S. 95, 109 (1983).

That "reasonable showing" requires something more than a speculative suggestion that the present-plaintiff may again be subjected to the complained-of conduct. Murphy v. Hunt, 455 U.S. 478, 482 (1982) (recognizing that "[t]he Court has never held that

a mere physical or theoretical possibility was sufficient to satisfy the test stated in Weinstein. If this were true, virtually any matter of short duration would be reviewable. Rather, we have said that there must be a 'reasonable expectation' or a 'demonstrated probability' that the same controversy will recur involving the same complaining party.") (quoting Weinstein, 423 U.S. at 149); see also Lyons, 461 U.S. at 107 n.8 ("It is the reality of the threat of [impending] injury that is relevant to the standing inquiry, not the plaintiff's subjective apprehensions."). Where the threat of future allegedly unconstitutional government action is two steps or more removed from a demonstrably definite action of the plaintiff, this court and the Supreme Court have found that government action too "remote and speculative" to defeat mootness under the capable-of-repetition-yet-evading-review doctrine. Super Tire, 416 U.S. at 123 (distinguishing the facts before the Court from cases where governmental seizure of a utility would only recur if, first, the utility's workers went on strike, and second, the governor exercised his discretion to seize the utility); ITT Rayonier Inc. v. United States, 651 F.2d 343, 345 (5th Cir. 1981) (refusing to apply the capable-of-repetition-yet-evading-review doctrine where recurrence required, first, that the plaintiff alter its pollution discharge policies, and second, that the EPA choose to pursue action against the plaintiff); see also C. & S. W. Servs., Inc. v. EPA, 220 F.3d 683, 700-01 (5th Cir. 2000) ("Dr. Carman's theory of injury is predicated upon the occurrence

6

of a string of future hypotheticals-that road construction will occur in proximity to the Edwards aquifer, that the construction crews will use PCB bulk product waste in the roadbed, that PCBs will leach from the roadbed, and that those PCBs will leach and contaminate aquifers or waterways. Nothing in the Carman and Sinclair affidavits suggest that any of these predicate events are likely to occur.").

Here, Vivian's claims based on the allegedly unconstitutional attachment of the vessel, for declaratory relief against Castro and injunctive relief against Hingle, are moot because (1) Castro's claim against Vivian has been settled, and no possibility of his seeking attachment of the vessel for that claim remains; (2) Castro had previously agreed to not seek reattachment of the vessel and, in fact, sought to invoke personal jurisdiction over Vivian by other means; (3) Vivian itself had previously posted bond to ensure that the vessel would not be reattached; and (4) Vivian has not alleged the existence of any other claims by Castro that could form the basis for the issuance of a writ of attachment in Plaquemines Parish against one of its vessels.

Any fear Vivian has that Hingle will again execute a writ of attachment against one of its vessels, or that a writ of attachment will even be sought against one of its vessels, is based on precisely the type of hypothetical harm that has been rejected as a means of establishing standing (or defeating mootness) both in this court and in the Supreme Court. See Lyons, 461 U.S. at 107

7

n.8; <u>C. & S. W. Servs.</u>, 220 F.3d at 700-01.

Vivian has not made a reasonable showing that the attachment of the vessel in this case is part of a series of repeated short-term exercises of the Louisiana attachment article against it, and cannot show that its vessel will be reattached in this particular case.  Moreover, Vivian's arguments that its vessels may be attached in the future are too remote, relying on a series of speculative conditions: (1) that Vivian will again be sued in a Louisiana state court, (2) that the future-plaintiff will seek to have the future-court exercise personal jurisdiction over Vivian via the article 3541 writ of attachment, (3) that the future-court will issue the writ of attachment, and (4) that the future-writ will be executed by the future-sheriff.  Without some "reasonable showing," this line of speculation is far too remote to trigger the capable-of-repetition-yet-evading-review doctrine. <u>Super Tire</u>, 416 U.S. at 123; <u>ITT Rayonier</u>, 651 F.2d at 345.

Moreover, assuming arguendo that the execution of a writ of attachment is a government action capable of repetition, it is not an action that necessarily evades review.  Vivian may raise its argument that article 3541 is unconstitutional as a defense in the state courts in any future proceeding.  The argument ultimately evades review here only because Vivian sought to have that argument reviewed in an alternative, federal forum.[1]

---

[1] Vivian contends that the Anti-Injunction statute would make <u>federal</u> court review impossible to obtain if its vessel is again

8

Vivian's only other claim is its claim for damages for wrongful attachment to recover court costs, costs of posting bond, and attorneys' fees related to the attachment of its vessel in the state court action.[2] Vivian contends that, because the resolution of this damages claim necessarily requires us to determine if the attachment procedure is constitutional, i.e., whether the attachment was "wrongful," the issue of article 3541's constitutionality is not moot.

However, it is well-established that, when the only controversy remaining that arises from the original case and controversy is the recovery of "sunk costs," such controversy is not a legally cognizable dispute that will save an action from the operation of the mootness doctrine. Lewis v. Cont'l Bank Corp., 494 U.S. 472, 480 (1990) ("[R]easonable caution is needed to be sure that mooted litigation is not pressed forward . . . solely in

---

subject to a Louisiana writ of attachment. Vivian's contention misses the thrust of Super Tire, however, which excepted from the mootness doctrine potentially repetitious actions that may evade any judicial review. Our traditions of federalism and comity command that we not exercise this exception to the mootness doctrine purely to avoid future review of an issue in the state courts.

[2] Though Vivian intimates that it is possible that the arrest of a vessel may entail significant losses of profit and operating costs each day, it does so only by reference to losses in other situations. At no point, in its complaint or in any other pleadings and arguments, has Vivian alleged that it suffered lost profits or operating expenses as a result of the attachment in the instant controversy. The only "damages" that Vivian specifically seeks in its complaint regarding the allegedly unconstitutional attachment are the sunk costs in the litigation—attorneys' fees, court costs, and the cost of posting bond.

9

order to obtain reimbursement of sunk costs."); <u>Bank of Marin v. England</u>, 385 U.S. 99, 111 n.1 (1966) (Fortas, J., dissenting) (collecting cases that rule that a controversy solely regarding costs cannot salvage an otherwise moot case); <u>Washington Mkt. Co. v. District of Columbia</u>, 137 U.S. 62 (1890); 13A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3533.3 at 268-69 & nn. 15, 16 (2d ed. 1984 & Supp. 2000) ("Claims for costs . . . traditionally have not been thought sufficient to avoid mootness, presumably on the theory that such incidental matters should not compel continuation of an otherwise moribund action.").[3] Accordingly, this claim is also moot.

## III.

Because we find that all of Vivian's claims have become moot, we do not have subject matter jurisdiction to review the merits of this case. Therefore, we VACATE the judgment of the district court, and REMAND with instructions to DISMISS Vivian's complaint as moot. <u>See</u> <u>Arizonans for Official English v. Arizona</u>, 520 U.S. 43, 71 (1997) ("When a civil case becomes moot pending appellate adjudication, '[t]he established practice . . . in the federal

---

[3] Vivian's contention that the arrest of its vessel <u>possibly</u> <u>may</u> entail significant daily profit and operating cost losses amounts only to another in the series of hypothetical "could haves" and "maybes" upon which it seeks to hang the subject matter jurisdiction of this court.

10

system . . . is to reverse or vacate the judgment below and remand with a direction to dismiss.'") (quoting <u>United States v. Munsingwear, Inc.</u>, 340 U.S. 36, 39 (1950)).