# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 17, 2010

Lyle W. Cayce
Clerk

No. 09-10963

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff

R. ALLEN STANFORD,

Defendant - Appellant

v.

RALPH S. JANVEY,

Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:09-CV-0298-N

Before STEWART, PRADO, and ELROD, Circuit Judges.

PER CURIAM:*

The Securities and Exchange Commission (SEC) brought an action against

several defendants, including R. Allen Stanford (hereinafter Stanford).   Later,

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 09-10963

the district court, at the SEC's request, appointed Ralph Janvey as receiver for Stanford's assets (hereinafter Janvey or the Receiver), as well as those of Stanford-controlled entities. Subsequently, Janvey filed two motions seeking approval of the judicial sale of assets from the Receivership Estate, which Stanford opposed. The district court granted the motions. We granted Stanford's petition for interlocutory appeal of the district court's judgments. For the following reasons, we DISMISS this appeal as moot.

## I.

This appeal arises out of an alleged multi-billion dollar Ponzi scheme perpetrated by a network of some 130 entities, spanning 14 countries, controlled by Stanford. On February 16, 2009, the SEC filed suit against Stanford. Concurrent to filing suit, the SEC sought a temporary restraining order and preliminary injunction to freeze all of Stanford's assets. The district court granted the order and later appointed Janvey receiver of the assets. Pursuant to the district court's order, Janvey has broad powers to "[p]erform all acts necessary to conserve, hold, manage, and preserve the value of the Receivership Estate, in order to prevent any irreparable harm." The district court also granted Janvey's subsequent request for the appointment of a private-equity advisor, Park Hill Group (PHG), to manage Stanford's investment portfolio.

After Janvey and PHG conducted their preliminary valuation of Stanford's investment portfolio, they determined that many of Stanford's investments had a negative equity and "a number include contractual commitments that would require the Receivership Estate to contribute additional millions of dollars or face significant dilution or total loss of the investment." At issue in this case are interests in three limited partnerships—Israel Opportunity Fund I, L.P. (IOF I); Israel Opportunity Fund II, L.P. (IOF II); and Midway CC Hotel Partners, L.P. (Midway or Midway Interest).

In July 2009, Janvey filed two motions with the district court. In the first

No. 09-10963

motion, Janvey asked the district court to confirm the sale of IOF I and IOF II (collectively, the IOF Interests) because the Receivership Estate could not afford the $61 million additional funds that the IOF Interests would require.  Janvey also explained that the Receivership Estate was already past-due on a pending capital contribution to IOF II of $2.5 million and risked dilution of its initial investment of approximately $14.3 million to approximately $400,000.  Similarly, Janvey filed a second motion asking the district court to confirm the sale of  Midway because the Receivership Estate could not afford the pending capital call, which would require it to choose between investing an additional $3.2 million into the partnership or face having its limited partnership interest diluted from 71.83% to approximately 59.30% pursuant to Midway's partnership agreement.  In both motions, Janvey explained that liquidation of the IOF and Midway Interests would achieve the maximum benefit from the holdings and was in the best interest of the Receivership Estate.  In response to the motions, Stanford argued that the sales constitute a breach of the Receiver's fiduciary duty, were not in the best interests of the Estate, and should not occur until the case is resolved on its merits.

On August 25, 2009, in two separate orders, the district court approved the sale of the IOF and Midway Interests.  In both orders, the district court summarily held that "the transactions . . . are in the best interests of the Receivership Estate."  We granted Stanford's petition for an interlocutory appeal.  At issue on appeal is: (1) whether this court has jurisdiction to review the district court's orders and (2) whether the district court had subject matter jurisdiction to confirm the sale of the IOF and Midway Interests.  We hold that although we have statutory jurisdiction over this appeal, the appeal is moot.

## II.

We review "questions of law as to jurisdiction *de novo.*" *Ramirez-Molina v. Ziglar,* 436 F.3d 508, 513 (5th Cir. 2006).  Janvey makes two claims regarding

3

our jurisdiction. He argues that: (1) we do not have statutory jurisdiction pursuant to 28 U.S.C. § 1292(a)(2) and (2) we do not have constitutional jurisdiction because this appeal is moot. We address each of these challenges in turn.

## A.

Stanford contends that we have jurisdiction to hear his appeal pursuant to 28 U.S.C. § 1292(a)(2), which grants this court jurisdiction over certain interlocutory appeals involving receivers. Janvey acknowledges that we have jurisdiction pursuant to our interpretation of section 1292(a)(2) in *United States v. "A" Manufacturing Co.*, 541 F.2d 504 (5th Cir. 1976). However, Janvey claims that we incorrectly interpreted section 1292(a)(2), and thus, this panel should reconsider its decision in that case. In *"A" Manufacturing*, we explained that "[s]ection 1292(a)(2) provides for appeals from interlocutory orders which take steps to accomplish the purpose of receiverships such as directing the sale or disposal of property. It logically follows that if an order directing a sale is appealable then an order confirming a sale after the fact is likewise appealable." 541 F.2d at 505–06.

It is well-established that a panel does not have the authority to overrule a previous panel's decision absent an intervening, contrary, or superseding decision by this court, sitting en banc, or by the Supreme Court.[1] *United States*

---

[1] Janvey also claims that the Supreme Court's decision in *Mohawk Industries, Inc. v. Carpenter*, 130 S. Ct. 599, 604–05 (2009), calls into question this court's decision in *"A" Manufacturing*. In *Mohawk*, an employment case, the employer sought a "collateral order appeal" of the district court's order to disclose information related to the employee's pre-termination interview with the employer's attorney. 130 S. Ct. at 599. The Eleventh Circuit dismissed the appeal for want of jurisdiction. *Id.* at 603. The primary question before the Supreme Court was "whether disclosure orders adverse to the attorney-client privilege qualify for immediate appeal under the collateral order doctrine." *Id.* The Supreme Court explained that the collateral order doctrine, articulated in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546 (1949), allows a "'small class' of collateral rulings that, although they do not end the litigation, are appropriately deemed 'final'" pursuant to section 1291. *Mohawk*, 130 S. Ct. at 605. Ultimately, the court cautioned that the doctrine should be applied on a limited basis,

No. 09-10963

*v. Setser*, 607 F.3d 128, 131 (5th Cir. 2010) (citing *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999). Thus, pursuant to our decision in *"A" Manufacturing*, we have jurisdiction to hear Stanford's interlocutory appeal.

## B.

Janvey also argues that, even if we have statutory jurisdiction, we lack constitutional jurisdiction because Stanford's appeal is moot. *See United States v. Lares-Meraz*, 452 F.3d 352, 355 (5th Cir. 2006) ("Whether an appeal is moot is a jurisdictional issue because it implicates Article III's requirement of a live case or controversy."). Janvey contends that, because Stanford failed to seek a stay of either sales transactions, this court cannot grant Stanford the relief he seeks. Thus, Janvey argues, Stanford's inaction rendered moot an appeal of the district court's judgments confirming the sales. In response, Stanford argues that a stay was not necessary because the district court lacked subject matter jurisdiction, as the sale of the IOF and Midway Interests were conducted without following the statutorily mandated procedural requirements of 28 U.S.C. § 2001, which governs the sale of real property, or 28 U.S.C. § 2004, which governs the sale of personal property. For the following reasons, we conclude that this appeal is moot.

There is little authority discussing the effect of failing to seek a stay pending appeal on a party's right to challenge a district court's order confirming a judicial sale pursuant to § 2001 or § 2004. However, we are not without guidance. Judicial sales often occur during the course of bankruptcy proceedings, in which a stay pending appeal is statutorily mandated. *See* 11 U.S.C. § 363(m) (explaining that, unless a party obtains a stay pending appeal

---

and held that the appeal was properly dismissed by the Eleventh Circuit. *Id.* at 599. Janvey contends that the analysis in *Mohawk* undermines the analysis in *"A" Manufacturing* because *"A" Manufacturing* was based primarily on cases interpreting section 1291. However, *"A" Manufacturing* does not rely on the collateral order doctrine. Thus, *Mohawk* is not applicable to our interpretation of section 1292(a)(2) in *"A" Manufacturing*.

of an order  confirming the sale of property in a bankruptcy proceeding, an appeal cannot effect the sale to a good faith purchaser).  In those cases, we have had the opportunity to opine on the importance of seeking a stay.  *See, e.g., Am. Grain Assoc. v. Lee-Vac, Ltd.*, 630 F.2d 245, 247 (5th Cir. 1980).  Moreover, there is a plethora of case law discussing the consequences of failing to stay or enjoin the sale of property.  In these situations, we generally hold that the appeal is moot where the action sought to be enjoined by this court has occurred.  *See Seafarers Intern. Union of N. Am. v. Nat'l Marine Servs.*,  820 F.2d 148, 151 (5th Cir. 1987), *abrogated on other grounds by Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. Nat'l Labor Relations Bd.*, 501 U.S. 190, 198 (1991).  The purpose of a stay or injunction, pursuant to Federal Rule of Civil Procedure 62 or Federal Rule of Appellate Procedure 8, is to prevent a party's claim from being moot by preserving the status quo pending resolution of an appeal.  *Neeley v. Bankers Trust Co. of Tex.*, 848 F.2d 658, 661 (5th Cir. 1988).  If proceedings are not stayed, then an event may occur while a case is pending appeal that makes it impossible for the court to grant any effectual relief.  *Tex. Midstream Gas Servs., LLC v. City of Grand Prairie*, 608 F.3d 200, 204–05 (5th Cir. 2010) (citations and internal quotation marks omitted).

These basic principles are an important part of our jurisprudence because, relevant to this case, the judicial sale of property often involves the rights of a "good faith purchaser"—a party who purchases assets for value, in good faith, and without notice of adverse claims.  *Hardage v. Herring Nat'l Bank*, 837 F.2d 1319, 1323 (5th Cir. 1988); *see also Black's Law Dictionary* 1355 (9th ed. 2009).  A good faith purchaser, like the purchasers of the IOF and Midway Interests, are afforded special protection.  The importance of securing the rights of good faith purchasers is so fundamental that the Supreme Court explained almost 200 years ago:  "Strong as a plaintiff's equity may be, it can in no case be stronger than that of a purchaser, who has put himself in peril by purchasing a title, and

No. 09-10963

paying a valuable consideration, without notice of any defect in it, or adverse claim to it." *See Boone v. Chiles*, 35 U.S. 177, 210 (1836).  Accordingly, with few exceptions, good faith purchaser status trumps a challenge to an order confirming the sale of property. *See generally In re Bleaufontaine, Inc.*, 634 F.2d 1383, 1388 n.7 (5th Cir. 1981) (explaining that in bankruptcy proceedings a party's good faith purchaser status should be revoked if the party's conduct involved "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." (citation and internal quotation marks omitted)).  As Stanford did not seek to stay the sale of the IOF and Midway Interests and the investments were sold to good faith purchasers, we conclude that Stanford's appeal is moot.

### III.

For the foregoing reasons, we DISMISS this appeal as moot.